UNITED STATES of America,
Plaintiff–Appellee,

v.

Lee Henry MATTISON, Defendant–
Appellant.

No. 98–1027.

United States Court of Appeals,
Seventh Circuit.

Argued May 27, 1998.

Decided Aug. 10, 1998.

David E. Risley (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee.

Michael J. Costello (argued), Costello & Panichi, Springfield, IL, for Defendant–Appellant.

Before BAUER, EASTERBROOK and ROVNER, Circuit Judges.

BAUER, Circuit Judge.

Lee Henry Mattison was convicted on three counts of distribution of a controlled substance, in violation of 21 U.S.C. § 841(a), and was sentenced to 292 months imprisonment. Mattison now appeals his convictions and sentence. We affirm.

#### BACKGROUND

On January 28, 1997, while Lee Henry Mattison was at Sangamon County Jail to

take care of an unrelated traffic warrant, state and federal agents informed him that there was a federal warrant for his arrest for various drug related charges, including distributing cocaine. Illinois State Police Sergeant Todd Kilby, Special Agent Brad Colbrook and DEA Task Force Agent Brian Bressan then discussed with Mattison the possibility of his cooperation with their investigation; the agents were interested in information Mattison could provide about other drug traffickers. The agents suggested that if Mattison provided complete and truthful information regarding his drug business and assisted them in their investigation, the information he provided would not be used as evidence against him. An Assistant United States Attorney was present for this conversation and discussed with Mattison the scope of the cooperation agreement, its requirements, and its impact on any further proceedings against him. Mattison was advised that no promises could be made as to what punishment he would receive for the distribution charges. He was also told that if he did not cooperate fully and give complete and truthful statements, then the agreement would be null and void and any statement he made could be used against him. Mattison accepted the terms and agreed to cooperate with the government. The agents gave Mattison his *Miranda* rights and proceeded with the interview.

In the interview, Mattison admitted that he sold crack cocaine and identified his sources. Ultimately, as part of the cooperation agreement, he agreed to contact one of his sources in order to purchase drugs while under the agents' surveillance. Mattison was released after the interview. The next day he directed the agents to where he believed his sources could be found; he was then fitted with a tape recorder and was instructed to attempt to buy drugs from one of his sources. Mattison drove to several locations while under surveillance, but did not stop anywhere, did not talk to anyone, and did not even get out of the car in an attempt to follow through with the drug buy. After that, Mattison did not have any further contact with the agents. He was then charged in a four count indictment with three counts of distributing cocaine base (Counts 1, 3, and 4) and one count of possessing cocaine base with the intent to distribute (Count 2), in violation of 21 U.S.C. § 841(a).

Prior to the trial, Mattison moved to suppress certain evidence seized during a search of his residence on January 9, 1996 and to suppress statements he made during his interview with law enforcement officers on January 28, 1997 at the Sangamon County Jail. The district court held a suppression hearing on September 8, 1997. Both Sergeant Kilby and Mattison testified about the circumstances surrounding the interview. Sergeant Kilby testified that he informed Mattison of his *Miranda* rights before the interrogation began and that Mattison subsequently made incriminating statements. Mattison testified that he was not given his *Miranda* rights at any time, and he denied making any incriminating admissions. The district court found Sergeant Kilby's account of the interview to be more credible than the defendant's and concluded that the defendant was given adequate *Miranda* warnings and that he waived those rights. As a result, the district court denied Mattison's motion to suppress his statements.

To understand the context of Mattison's motion to suppress evidence found during a search of his house, we must take a few steps back to establish the facts and circumstances which led up to the search. Illinois State Police Sergeant Dan Reed gave Peter Followell, a police informant, $50 to purchase drugs at Mattison's house. The money included two $20 bills and one $10 bill; Sergeant Reed recorded the serial numbers of the bills. Special Agent Colbrook drove Followell to the defendant's residence, watched him walk into the house, and waited for him to return. Followell turned over the drugs he had purchased from Mattison to Agent Colbrook, and subsequent laboratory tests established that the substance consisted of 0.2 gram of cocaine base.

Based on information and belief that Mattison was dealing drugs, the state police submitted its application for a search warrant to be executed at his residence. An affidavit from Illinois State Trooper Greg Lindemulder was attached to the application

and it provided the rationale for the warrant and included a request for "no-knock" authorization. A search warrant was issued based on that application, but the warrant itself made no reference to authorizing a no-knock entry. Later that day, the police executed a no-knock search of the defendant's residence.[1] Mattison also was searched, and the two $20 bills Followell used to purchase the crack were found in Mattison's pocket, and some keys were found in a pair of his coveralls in his bedroom.[2] It is the money and the keys that Mattison objects to as being the result of an unauthorized and illegal no-knock entry.

At the suppression hearing, the government submitted the application for the warrant and the affidavit attached to the application, which included the request for a no-knock search warrant. Sergeant Kilby also testified about the evidence obtained during the search of the defendant's house. He was a member of the team that executed the search, and Sergeant Kilby testified that the team did not knock but did announce its presence. Kilby explained that Officer Lindemulder advised the team that he had received a no-knock search warrant from the judge. Although he could not recall whether he saw a copy of the search warrant beforehand, Kilby further testified that in his experience with the routine procedures in Sangamon County, a judge never indicated on the face of the warrant itself that it was a no-knock warrant. The government also called an Assistant State's Attorney from Sangamon County who testified that in her experience the only place a no-knock entry was noted was on the application for the warrant and not on the face of the warrant. After reviewing the evidence, the district court found that, notwithstanding the lack of notation on the face of the warrant, the judge had issued a search warrant which authorized no-knock entry. Accordingly, Mattison's motion

to suppress the evidence seized during the search was denied.

Following a jury trial, the defendant was convicted on Counts 1, 3, and 4 for distributing a controlled substance and acquitted on Count 2. After the sentencing hearing, the district court sentenced Mattison to 292 months imprisonment to be followed by 3 years of supervised release and imposed a special assessment of $250. Mattison filed a timely notice of appeal. The defendant asserts several arguments on appeal, arguing that: (1) the district court erroneously denied his motion to suppress the evidence obtained during the illegal search of his residence because there was an absence of exigent circumstances to justify the issuance of a no-knock search warrant; (2) the admission of his confession at trial was error because it was a proffer statement given in light of his cooperation agreement with the government; and (3) the district court erroneously enhanced his sentence based on its finding that Mattison was dealing crack cocaine when the proof demonstrates that the substance was some other form of cocaine base. The defendant asserts a series of additional arguments, challenging the sufficiency of the evidence presented at trial and statements made by the prosecutor during closing arguments, as well as an improper jury instruction and certain findings of fact made by the court at sentencing. We now turn to the issues presented for review and address each argument in turn.

## ANALYSIS

■■■ Mattison first argues that the evidence obtained in the search of his residence should have been suppressed because there were no exigent circumstances to justify either the issuance of a no-knock warrant or the execution of the warrant in a no-knock

---

1. A "no-knock" search warrant allows the police to enter the residence without knocking and announcing their presence and purpose before entering the residence.

2. Later that same day, the police executed another search warrant at the nearby residence of Dorothy Bogart. Inside a bedroom in Bogart's house, agents found what subsequent laboratory analysis determined was 51.4 grams of cocaine

base, hidden in a dresser. The door to that bedroom was secured by a padlock. One of the keys founds in the Mattison's coveralls during the search of his house fit the padlock and opened the door. Dorothy Bogart testified that the drugs found in her bedroom belonged to the defendant, and that the defendant sold and stored drugs in her house.

fashion. He contends that the no-knock search of his residence violated his Fourth Amendment right to be free from unreasonable searches and seizures. We review *de novo* a district court's determinations of reasonable suspicion and probable cause. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *United States v. Stowe*, 100 F.3d 494, 499 (7th Cir. 1996). However, the question of whether exigent circumstances exist in the issuance of a search warrant is a mixed question of law and fact. *United States v. Bailey*, 136 F.3d 1160, 1164 (7th Cir.1998). While the trial court's factual findings regarding the issuance of a search warrant are subject to the clearly erroneous standard, the determination of whether those facts constitute exigent circumstances to justify the issuance of a no-knock search warrant is a legal question subject to *de novo* review. *Id.*

■ At the suppression hearing, the testimony focused on whether a no-knock search warrant was issued even though the warrant itself lacked any specific notation to indicate that the judge had authorized a no-knock entry. The district court did not make any specific finding of exigent circumstances, but nonetheless found that a no-knock search warrant was issued. Our review, therefore, is a two step analysis; we must determine whether the district court erroneously determined that the judge issued a no-knock warrant and then consider whether exigent circumstances justified the authorization of a no-knock search warrant. Findings of historical fact are reviewed only for clear error, and we "give due weight to inferences drawn from those facts by resident judges and local law enforcement officials." *Ornelas*, 517 U.S. at 699–700, 116 S.Ct. 1657.

■ The government presented testimony that it was common procedure in Sangamon County for there to be no specific notation on a search warrant to indicate its no-knock status; generally, the only place a no-knock request is noted is on the application for the warrant. In the instant case, the affidavit attached to the application for the warrant

specifically requested the judge to issue a no-knock search warrant. After listening to the testimony and reviewing the evidence submitted at the suppression hearing, the district court concluded that notwithstanding the fact that the warrant did not indicate on its face that no-knock entry was authorized, a no-knock search warrant was nonetheless issued. It was reasonable for the district court to rely on the witnesses' testimony and their experiences with Sangamon County's common procedures for the authorization of no-knock warrants. We find no error with the district court's finding that a no-knock search warrant was issued.[3]

■ Notwithstanding the court's finding, we must consider the threshold issue of whether exigent circumstances justified the issuance of a no-knock search warrant. In *Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), the Supreme Court articulated the circumstances under which an unannounced entry is reasonable under the Fourth Amendment. 117 S.Ct. 1416, 1422. The Court recognized that the practice of allowing a judge to authorize the issuance of a no-knock search warrant is entirely reasonable "when sufficient cause to do so can be demonstrated ahead of time." *Id.* at 1422 n. 7. A no-knock search is justified when there is a reasonable suspicion that knocking and announcing the police officers' presence would be "dangerous or futile, or that it would inhibit the effective investigation of the crime...." *Id.* at 1421. This court has held that failure to knock and announce the execution of a search warrant is excused if exigent circumstances exist, such as when the defendant's awareness of a search would increase the danger to police officers or others, when drugs or firearms are regularly observed inside a defendant's residence, or when information leads police to reasonably conclude that the defendant is in possession of a large amount of drugs. *United States v. Buckley*, 4 F.3d 552, 558 (7th Cir.1993).

The affidavit included information from an informant that the defendant was in posses-

---

**3.** Notwithstanding routine procedures for the request, authorization, and issuance of a no-knock search warrant, it would certainly save a lot of time and reduce the error rate, if judges indicated the no-knock authorization on the face of the warrant.

sion of crack cocaine and that the defendant had stated he was in possession of a weapon and threatened to kill anyone who interfered with his drug sales; this information alone is sufficient to justify the execution of a no-knock search warrant. *Id.* Furthermore, Sergeant Kilby testified at the suppression hearing that the execution of this particular search warrant was high risk because the information the police had was that some of the occupants were armed and had a history of violence. He also testified that their information indicated that some of the occupants of the house were gang members. The district court accepted Sergeant Kilby's testimony as truthful.

Although the district court did not articulate any specific findings of exigent circumstances in its order denying the defendant's motion to suppress, it did recognize that the affidavit attached to the warrant application specifically provided the rationale for receiving a no-knock warrant. Based on that identification, we infer that the court accepted that rationale, and we agree with its determination that a no-knock search warrant was reasonable.[4] In light of the affidavit and Sergeant Kilby's testimony at the suppression hearing, we find that exigent circumstances justified the issuance of a no-knock search warrant. Accordingly, the evidence obtained in the search of Mattison's house resulted from a legal search and was properly admitted into evidence.[5]

Next, Mattison asserts that the district court erroneously admitted some incriminating statements he made during his interview with government agents, arguing that those statements are protected by his cooperation agreement. The defendant failed to object to the admission of his statements at trial, and we therefore review their admissibility for plain error. FED.R.CRIM.P. 52(b).

Generally, a defendant's statements made pursuant to a proffer or cooperation agreement are inadmissible against him at trial pursuant to Federal Rule of Criminal Procedure 11(e)(6).[6] However, evidence of proffer statements may be introduced to establish that the defendant was less than truthful or that his cooperation was less than complete. *United States v. Cobblah*, 118 F.3d 549, 551 (7th Cir.1997). The government acknowledges that it discussed the possibility of a cooperation agreement with Mattison; he was informed that, *based on his truthfulness and cooperation*, his statements would not be used against him, but it disputes the fact that the defendant followed through with his intentions to cooperate. Initially, the defendant may have agreed to cooperate with the agents and provided some

---

4. It is unnecessary for us to consider the argument that even if the search warrant did not authorize the no-knock entry, the police officers acted in good faith believing that it was a valid no-knock warrant. However, for the sake of argument, even if the judge should not have authorized the no-knock entry, a finding of good faith under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), would nonetheless prevent the suppression of the evidence obtained in the search.

5. The defendant additionally claims that his confession should have been suppressed at trial because it was the "fruit of the poisonous tree" based on the illegal search. Because we have found the search to be legal, this argument is moot.

6. Rule 11 specifically states:

**Inadmissibility of Pleas, Plea Discussions, and Related Statements.** Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in plea discussions:

(A) a plea of guilty which was later withdrawn;

(B) a plea of nolo contendere;

(C) any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or

(D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in criminal proceedings for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

FED.R.CRIM.P. 11(e)(6).

helpful information during his interview, but the government contends that Mattison did not follow through with his initial willingness to cooperate.

A cooperation agreement is a contract, and its terms are binding on the parties. *Id.* Prior to the interview, Mattison was informed that if he agreed to cooperate with the investigating agents, his statements would not be used against him as evidence. However, he was also advised that if he lied or otherwise failed to cooperate with the government, then anything he said could be used as evidence against him. Mattison agreed to cooperate based on these terms. Although he drove to several locations purportedly to buy drugs from one of his sources, he failed to follow through with the purchase, and after that, he did not have any further contact with the agents. Mattison failed to demonstrate a good faith attempt to carry out his part of the bargain, and the fact that he made no effort to cooperate after that first day violated a fundamental condition of his agreement. With the absence of any evidence to indicate that Mattison in fact cooperated with the government, it was reasonable for the district court to conclude that he violated the terms of his cooperation agreement and its decision to admit his statements was not erroneous.

Mattison also asserts several arguments challenging his sentence, arguing that: (1) the district court enhanced his sentence based on an erroneous finding that he was dealing in crack cocaine; (2) the court erroneously applied an enhancement to his sentence for obstruction of justice based on its findings that he committed perjury; and (3) the court failed to apply a sentencing guideline, which authorized a downward adjustment based on his age. We review the district court's interpretation and application of the Sentencing Guidelines *de novo* and its findings of fact, including those regarding the type of drug and the amount in question, for

clear error. *United States v. Roy,* 126 F.3d 953, 954 (7th Cir.1997).

In *United States v. Adams,* 125 F.3d 586 (7th Cir.1997), we concluded that the government must prove by a preponderance of the evidence that the defendant possessed crack cocaine specifically and not some other form of cocaine powder. 125 F.3d at 592. In its detailed sentencing order, the district court found that the Presentence Investigation Report ("PSR") was accurate in its finding that the defendant was accountable for 9.56 kilograms of crack based upon his relevant conduct, his admissions to the agents, and the amounts charged in the indictment. The district court also found that the testimony presented at the sentencing hearing as well as the trial supported the government's position. In addition, the defendant specifically admitted to Agents Kilby and Bressan that he was involved in the crack cocaine business and that he was distributing crack in the Springfield area. Based upon the PSR, testimony of experts, as well as testimony of other witnesses, the district court concluded that the government had sufficiently proven by a preponderance of the evidence that the defendant was involved in distributing crack cocaine, as opposed to another form of cocaine. The district court's findings were reasonable, and application of the sentence enhancement pursuant to Sentencing Guideline § 2D1.1(c) for crack cocaine was proper.[7]

The district court also applied a two level enhancement pursuant to Sentencing Guideline § 3C1.1 for obstruction of justice based on its findings that Mattison committed perjury at both the suppression hearing and the trial. Mattison, however, claims that the court's findings are erroneous because, notwithstanding his convictions on three counts of the indictment, the jury acquitted on one count which demonstrates that he may not have testified falsely and committed perjury. This argument is meritless; the fact that the jury acquitted him

---

7. The government suggests that we take judicial notice of the fact that virtually all of the cocaine base found in the United States is crack so as to eliminate the need to determine each and every time that the drug in question is in fact crack cocaine and not another form of cocaine base. We decline to make such a sweeping conclusion. The government continues to retain the burden of proof and that standard remains a preponderance of the evidence.

on one count has absolutely nothing to do with the district court's determinations that he committed perjury. A district court's finding of perjury is based primarily on the issue of credibility, and we give near absolute deference to a court's credibility determinations because the judge observed the witness's testimony first-hand. *United States v. Howard,* 80 F.3d 1194, 1205 (7th Cir.1996). The district court identified the relevant testimony and expressly found that it was false. There is absolutely no indication in the record that the district court's findings that Mattison committed perjury at both the suppression hearing and the trial are erroneous, and we conclude that its application of the enhancement was proper.

Mattison also assigns error to the district court's denial of an adjustment based on his age. *See United States v. Martin,* 63 F.3d 1422 (7th Cir.1995). The court's refusal to grant a downward departure is discretionary, and we lack jurisdiction to review its decision unless the court incorrectly applied a sentencing guideline or the sentence was imposed in violation of the law. *United States v. Yoon,* 128 F.3d 515, 529 (7th Cir. 1997). The district court specifically stated that although it may have the discretion to grant a downward departure on the basis of Mattison's age pursuant to Sentencing Guideline § 5H1.1, it was not merited in this case. It was within the court's discretion to refuse to apply the downward adjustment, and that decision is not reviewable.

Finally, we consider Mattison's series of perfunctory arguments and dismiss them with brief remarks. Mattison raises a scattered blast in these final arguments, challenging the sufficiency of the evidence, remarks during closing arguments, and a jury instruction. It is a formidable task to successfully challenge the sufficiency of the evidence even when a defendant develops his arguments and provides clear legal reasoning. Mattison merely asserts that the evidence was insufficient to convict without any discussion or legal analysis as to why it is insufficient. This argument is frivolous and insufficiently developed for appellate review. The challenge to the prosecutor's closing remarks and the jury instruction are equally

meritless; nothing in the record indicates that the defendant was denied a fair trial. After a careful review of the evidence presented at trial, we conclude that the jury had more than enough evidence to convict Mattison beyond a reasonable doubt.

CONCLUSION

For the foregoing reasons, we AFFIRM the defendant's convictions and sentence.