*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0355p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

　　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

AARON J. SMITH,

　　　　　　　　　*Defendant-Appellant.*

No. 02-4261

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 02-00001—S. Arthur Spiegel, District Judge.

Argued: February 3, 2004

Decided and Filed: October 19, 2004

Before: DAUGHTREY and COLE, Circuit Judges; POLSTER, District Judge.[*]

_____

## COUNSEL

**ARGUED:** David A. Elden, Los Angeles, California, for Appellant. Robert Brichler, UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** David A. Elden, Los Angeles, California, for Appellant. Robert Brichler, UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

_____

## OPINION

_____

　　　DAN AARON POLSTER, District Judge. Defendant-Appellant, Aaron J. Smith ("Smith"), entered a conditional plea of guilty to Count 1 of the Indictment, charging him with possession with the intent to distribute cocaine, a controlled substance, in excess of five kilograms, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(ii). Smith appeals the district court's order denying his motion to suppress evidence on the basis that the officers violated the knock-and-announce requirement derived from the Fourth Amendment to the United States Constitution. We **AFFIRM** the district court's order denying Smith's motion to suppress the evidence, albeit through different reasoning then that employed by the district court.

_____

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

# I. BACKGROUND

## A. Factual background

On January 2, 2002, David Lewis, a Norwood City police detective, filed an affidavit and request for a warrant to search the residence at 7106 Virginia Avenue in Deer Park, Ohio. The affidavit indicated that: 1) an informant had reported that a large shipment of cocaine arrived at 7106 Virginia Avenue; 2) the cocaine had been hidden in a special concealed compartment in a silver Chevrolet Lumina parked in the detached garage; 3) about five people were inside the residence, including a member of a local outlaw biker organization, Elmer Griffith, who had prior convictions for drugs and weapons offenses; and 4) there were several shotguns and handguns at the home.[1] After vouching for the reliability of the informant, the affiant provided in part:

> Affiant further says that there is urgent necessity that the search be conducted in the nighttime to prevent the loss of any evidence and to use the cloak of darkness for officer safety. The occupants [to wit, Elmer Griffith] are believed to be armed and dangerous. A "no-knock" provision is requested for the safety of the officers making entry to secure this location.

*Id.* Based upon this information, a Hamilton County municipal court judge issued a search warrant allowing Detective Lewis to search the home, the detached garage, and vehicles located at 7106 Virginia Avenue. The warrant itself states in part:

> Whereas, there has been filed with me an affidavit, a copy of which is attached, hereto and incorporated herein, these are therefore, to command you in the name of the State of Ohio, with the necessary and proper assistance, to enter, in the night[2] time, into the residence . . . the detached garage . . . and all vehicles located within said garage and on the premises.

The judge did not reference the no-knock request in the warrant.[3]

In executing the warrant, the law enforcement team used a ram to break down the door before shouting: "Police. Search warrant," and then set off a diversionary device to avert any resistance. When Smith ran out of a side door, an officer apprehended him in the side yard and advised him of his constitutional rights. The law enforcement team secured the residence and then conducted their search of the residence. Nothing of consequence was uncovered. During this time, an officer told Smith that they knew about the cocaine in the concealed compartment in Smith's Chevrolet Lumina located in the garage and that they were going to get the cocaine with or without his help. The officer further explained that if they did not get Smith's cooperation they would cut, with a torch, into any area of the car they thought might contain a concealed compartment. Smith informed the officer that the keys to the Chevrolet Lumina vehicle parked in the garage were in his pants pocket. An officer retrieved the keys, entered the open

---

[1] Although Detective Lewis testified that the informant told him that he had seen shotguns and handguns in the residence one week earlier, Detective Lewis did not include this information in his affidavit.

[2] The word "night" was typed in a line inserted between "the" and "time" on the warrant.

[3] During the suppression hearing, Detective Lewis conceded the warrant itself contained no language authorizing a no-knock entry.

garage[4] and, with Smith's instructions, accessed the concealed compartment behind the rear seat. The officers' search of the concealed compartment in the vehicle yielded approximately 37 kilograms of cocaine [about 80 pounds].

### B. Procedural background

Smith was indicted and charged with possession with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 841 (a)(1) and 21 U.S.C. § 841(b)(1)(A)(ii). He filed a motion to suppress statements or assistance he offered to law enforcement officials, alleging that he was not given his *Miranda* warnings and that the statements or assistance resulted from threats, coercion, and intimidation. During the suppression hearing, Smith argued that since the entry of the law enforcement team violated the knock-and-announce rule and the warrant did not authorize a no-knock entry, the evidence obtained during the search should be suppressed. The district court denied the motion, finding that: 1) based on the custom of the community, Detective Lewis had a good faith belief that the officers were not required to knock and announce; 2) a reasonable judge would have agreed to the necessity of a no-knock warrant; 3) Smith was informed of his *Miranda* rights;[5] 4) Smith's statements and assistance were voluntary; and 5) the cocaine would have inevitably been discovered.

Smith subsequently entered a plea of guilty, reserving for appeal the issues raised in his suppression motion, and was sentenced to 70 months imprisonment. On appeal, Smith claims that the district court erred in failing to suppress the evidence because the officers' failure to knock and announce before entering the residence renders the fruits of their search inadmissible. Smith has not appealed the district court's rulings that he was given his *Miranda* warnings in a timely fashion and that his statements and assistance were voluntary.

## II. ANALYSIS

### A. Standard of review

In reviewing a trial judge's ruling on a motion to suppress, we review factual findings for clear error and review legal determinations *de novo*. *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000), *cert. denied*, *Williams v. United States*, 531 U.S. 1095 (2001). In reviewing the district court's decision, the evidence must be viewed in the light most favorable to the government. *United States v. Walker*, 181 F.3d 774, 776 (6th Cir. 1999). We will overturn the district court's factual findings, only if we have the "definite and firm conviction that a mistake has been committed." *United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999).

### B. Knock and Announce Rule

The requirement that law enforcement officers executing a search warrant at a person's home first knock and identify themselves, state their purpose for demanding entry, and allow the occupants time to open the door before forcibly entering has been established by the Supreme Court. *See Wilson v. Arkansas*, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). The knock-and- announce rule: 1) reduces "the

---

[4]When Detective Lewis first arrived the garage door was closed. Appellant's Brief at 3 n.1 (citing Motion Tran at RT 23). While the transcript of this portion of the hearing is not in the joint appendix, the government does not dispute this fact. After Smith was taken into custody, Detective Lewis went to the garage and found the garage door open.

[5]The district court explained that a dispute arose at the hearing as to whether officers informed Smith of his *Miranda* rights before asking him where the concealed compartment was located. "Officer Stokes, the lead officer on the raid on the defendant's home, testified that, while the defendant was still in the side yard next to the house, he orally informed the defendant of his *Miranda* rights before asking him to reveal the location of the hidden compartment." The district court held that "the testimony of Officer Stokes that he informed the defendant of his *Miranda* rights to be more credible than the testimony of the defendant to the contrary. Thus, the Court finds the defendant's statements to have been voluntary."

potential for violence to both the police officers and the occupants of the house into which entry is sought;" 2) curbs "the needless destruction of private property;" and 3) protects "the individual's right to privacy in his or her house." *United States v. Dice*, 200 F.3d 978, 982 (6th Cir. 2000) (citing *United States v. Bates*, 84 F.3d 790, 794 (6th Cir. 1996)). To protect these interests, we have held that the execution of a warrant in violation of the knock-and-announce rule renders any evidence seized under the warrant inadmissible. *Dice*, 200 F.3d at 982 (citing *Bates*, 84 F.3d at 795). *See also Miller v. United States*, 357 U.S. 301, 313-14, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958) (holding that because "the petitioner did not receive that notice before the officers broke the door to invade his home, the arrest was unlawful, and the evidence seized should have been suppressed"); *Sabbath v. United States*, 391 U.S. 585, 586, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968) (holding that because officers entered without a proper knock and announcement, the subsequent arrest was invalid and the evidence seized in the subsequent search was inadmissible).

Additionally, the knock-and-announce analysis is a part of the reasonableness inquiry under the Fourth Amendment.[6] *Wilson*, 514 U.S. at 934. Failure to knock and announce prior to forcibly entering a location to execute a search warrant, absent exigent circumstances, is unreasonable under the Fourth Amendment. *Dice*, 200 F.3d at 982 (citing *Wilson*, 514 U.S. at 934).

### 1) Entry into the Residence

The Court must closely scrutinize the action of officers making a forced entry without first adequately announcing their presence and purpose,[7] and the government bears the burden of demonstrating exigent circumstances. *Dice,* 200 F.3d 978, 983; *Bates*, 84 F.3 at 794. Absent exigent circumstances, it is unreasonable under the Fourth Amendment for the police to enter a residence without knocking and announcing their authority and presence. *See Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997); *Dice*, 200 F.3d at 982 (citing *Wilson*, 514 U.S. at 934).

The testimony adduced at the suppression hearing established that the law enforcement team failed to comply with this Fourth Amendment component before entering Smith's home. Smith contends that this failure violated his constitutional rights and that the evidence seized as a result of these violations should be suppressed. The government argues that the existence of exigent circumstances justified the team's no-knock entry into Smith's home or, alternatively, that the evidence should not be suppressed by reason of the good faith exception to the exclusionary rule.

### a) Exigent Circumstances

Officers are excused from compliance with the knock-and-announce requirement when they "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards*, 520 U.S. at 394. The Supreme Court has further held that, "in each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement,"[8] and

---

[6] In analyzing whether the knock-and-announce" requirement is met, or is excused, guidance is provided by 18 U.S.C. § 3109, which allows an officer to make a forced entry into a residence if, "after notice of [the officers'] authority and purpose, [they are] refused admittance. . . ." 18 U.S.C. § 3109. *See also Dice*, 200 F.3d at 983 ("Although *Nabors* interpreted 18 U.S.C. § 3109, Supreme Court holdings have made clear that § 3109 codified the common law knock-and-announce rule, and those same common law principles inform the Fourth Amendment analysis.")

[7] *See United States v. Nabors,* 901 F.2d 1351, 1355 (6th Cir. 1990).

[8] *See Richards*, 520 U.S. at 394.

that the officer's decision must be evaluated as of time of entry.**9** *Ker v. California,* 374 U.S. 23, 40 n.12, 83 S.Ct. 1623, 1633 n.12, 10 L.Ed.2d 726 (1963).

> We have recognized that exigent circumstances exist when:
>
>> 1) the persons within the residence already know of the officers' authority and purpose; 2) the officers have a justified belief that someone within is in imminent peril of bodily harm; or 3) the officers have a justified belief that those within are aware of their presence and are engaged in escape or the destruction of evidence.

*Bates*, 84 F.3d at 795 (internal quotations omitted). However, "officers must have more than a mere hunch or suspicion before an exigency can excuse the necessity for knocking and announcing their presence." *Id.*

None of the three factors cited in *Bates* is present here. There is no evidence that Smith, or any other occupant of the residence, knew of the officers' presence and purpose before the officers broke down the residence door or that someone in the residence was in imminent peril of bodily harm. Further, there were insufficient facts to support a conclusion that Smith, or anyone else in the dwelling, was armed, likely to use a weapon or become violent, or was of any threat to officer safety. *United States v. Nabors*, 901 F.2d 1351, 1354 (6th Cir. 1990).

The affidavit requested a no-knock warrant on the grounds that the confidential informant advised Detective Lewis that "there are about five people inside the residence at this time and that there are several shotguns and handguns that the CI [confidential informant] has seen and has described to affiant." However, "[e]vidence that firearms are within a residence, by itself, is not sufficient to create an exigency to officers when executing a warrant." *Bates*, 84 F.3d at 795. Moreover, during the suppression hearing, Detective Lewis admitted that he had not included in the affidavit the fact that the informant's observation of the weapons was one week old. Hence, the confidential informant's statement is not enough to excuse the necessity for the officers' knocking and announcing their presence. *Bates*, 84 F.3d at 795; *see, e.g.*, *United States v. Williams*, 198 F.3d 248, *5 (Table) (6th Cir. Oct. 22, 1999) (allowing a no-knock entry when informant told the officers that the suspect had a handgun ready whenever he answered the door).

On the other hand, evidence that an occupant has "a criminal record reflecting violent tendencies . . . can be enough to provide law enforcement officers with justification to forego the necessity of knocking and announcing their presence." Bates, 84 F.3d at 795. In this case, the affidavit states that one of the occupants, Elmer Griffith, is a member of an outlaw biker organization and "has prior convictions for drugs and weapons offenses." At the same time, nothing in the affidavit indicates that this occupant had a criminal history of violence or had ever shown violent tendencies. In addition, there is nothing in the affidavit to support the assumption that Griffith would be in the residence at the time of the search. (It turned out that he was not present.). Finally, there was no indication that the execution of the warrant posed special risks to the officers' safety. At least 20 law enforcement officers were on the scene to insure that the matter was handled safely.

The government further argues that an officer's belief that an occupant could have disposed of evidence creates exigent circumstances. In *Bates*, we explained that

> the government must prove they had "a reasonable belief that the loss or destruction of evidence [was] imminent." The mere possibility or suspicion that a party is likely to dispose of evidence when faced with the execution of

---

**9**In a footnote, the Supreme Court explained that a judicial officer's decision not to authorize a no-knock entry does not preclude officers, when executing a warrant, from concluding that it would reasonable to enter without knocking and announcing. *Richards,* 520 U.S. at 396 n.7.

a search warrant is not sufficient to create an exigency. Nor is the generalized and often recognized fear that destruction of evidence is an inherent possibility during the execution of a warrant adequate grounds to find exigent circumstances, although this is more likely to be accepted when the drugs are in easily disposable quantities.

84 F.3d at 796 (internal citations omitted). In the instant case, the affidavit in support of the warrant stated that "the occupants of the residence have removed some of the contraband from the secure compartment and have hidden most of it within the trunk and may have taken addition[al] cocaine and/or currency into the described residence." Hence, the officers could not have believed that the occupants had the ability to quickly destroy the evidence because they knew that they were searching for "a large quantity of cocaine," in either the trunk or a specially concealed compartment in a vehicle parked in a detached garage. In *Bates*, the Court declined to accept as the basis for a no-knock entry the officers' generalized fear that the occupants could dispose of 15 kilograms of powder cocaine by flushing it down the toilet or dumping it down the sink. 84 F.3d at 796. Similarly, there is insufficient evidence in this record to support a reasonable belief that the destruction of the large amount of cocaine involved in this case was imminent.

### b) Good Faith

The district court stated:

First, the Court concludes that it is the custom of the community that a request for a "no-knock" provision in an affidavit requesting a search warrant results in a "no-knock" warrant and, thus, the police officer executing this search warrant had a good faith belief that they were not required to knock and announce their presence. Further, the Court concludes that a reasonable judge, presented with the facts of this case would have agreed to the necessity of a "no-knock" warrant.

We find differently. In *United States v. Leon*, 468 U.S. 897, 905 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court held that the exclusionary rule "should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." An officer's good faith is judged by whether the officer's reliance was objectively reasonable.[10] This exception "is not devised for the unlawful conduct of all officers who mean well." *United States v. Whaley*, 781 F.2d 417, 421 (5th Cir.1986). The warrant in this case did not authorize a no-knock entry. It is true that the affidavit requested a night time, no-knock entry. However, the warrant itself merely authorized the officers to search "in the night time, into the residence . . . the detached garage . . . and all vehicles located within said garage and on the premises." It did not grant the officers permission to enter the residence and garage without knocking and announcing.

Detective Lewis testified that he believed that when the application requests a no-knock entry the judge, by signing the search warrant, has authorized a no-knock entry. The government argues that when the judge signed the search warrant, he incorporated the affidavit by reference and that this incorporation makes the warrant a no-knock warrant. As a basis for its incorporation argument, the government relies upon *United States v. Johnson*, 267 F.3d 498 (6th Cir. 2001). There we concluded that because the warrant "quite clearly incorporates the affidavit 'as if fully set out herein,' which explicitly requests authority to enter the premises without knocking," the warrant itself need not specifically authorize a no-knock entry. *Johnson*, 267 F.3d at 500. However, the language in *Johnson* cited by the government is *dicta*, since in the same paragraph, we pointed out that the defendant had forfeited the issue concerning the validity of the no-

---

[10] *Leon*, 468 U.S. at 919.

knock warrant because he failed to raise the argument before the district court.**11** *Id.* Therefore, it cannot serve as precedent. *See United States National Bank of Oregon v. Independent Insurance Agents of America, Inc.*, 508 U.S. 439, 463 n.11 (1993)(emphasizing "the need to distinguish an opinion's holding from its *dicta*").

More importantly, the government's incorporation argument negates the rationale for having a neutral, detached judicial officer review the affidavit and determine whether or not to authorize a no-knock entry.**12** Were we to accept the government's argument, the default position would be an exception to the Fourth Amendment. Not only would this turn the Fourth Amendment on its head, but it is just as reasonable, if not more so, to presume that when, as here, the officer requested both the authority to execute the search at night *and* to enter unannounced, and the warrant authorized only the former, that the judge intended to do exactly what he did.

Next, the government argues that based on the customary practice in Hamilton County, the officers acted on the reasonable good faith belief that a no-knock entry was authorized. In support of this claim the government points to *United States v. Mattison*, 153 F.3d 406 (7th Cir. 1998). However, *Mattison*, a decision of a sister circuit that is not binding upon us, is easily distinguishable from the instant case. Based on established county procedures, the *Mattison* court held that the judge in that case authorized a no-knock entry even though there was no specific authorization for a no-knock entry in the search warrant. 153 F.3d at 410. The police sergeant testified that according to the procedure in Sangamon county, a judge never indicated on the face of the warrant that no-knock authority was given, even though the affidavit specifically requested a no-knock search warrant. *Id.* at 409. Additionally, an assistant state's attorney testified that the only place a no-knock entry is ever noted is on the application, not on the warrant itself. *Id.*

There was no such testimony in the instant case. The only evidence that a no-knock warrant had been issued came from the affiant, who testified that it was common procedure not to show no-knock authorization on the warrant. Unlike *Mattison*, there was no testimony at the suppression hearing from an assistant state's attorney. Also unlike *Mattison*, there was no testimony in this case that the search warrant affiant told the searching team they had received no-knock authority from the magistrate. We conclude that the testimony offered by Detective Lewis fell well short of the evidence that led the *Mattison* court to conclude that the officer was justified in believing that the judge had authorized a no-knock entry. We also note the *Mattison* court's advice regarding reliance on this informal practice: "Notwithstanding routine procedures for the request, authorization, and issuance of a no-knock search warrant, it would certainly save a lot of time and reduce the error rate, if judges indicated the no-knock authorization on the face of the warrant." *Id.* at 410 n.3. Nothing in Sixth Circuit precedent indicates that we may overlook the magistrate's failure to authorize a no-knock entry on the face of a search warrant.

Accordingly, we hold there is insufficient evidence to establish a good faith objective belief by a well-trained officer that a warrant containing no provision for a no-knock entry in fact authorized such an entry. Had the officers executing the warrant seized evidence from inside the residence, it would have to be suppressed. In this case, however, no such evidence was offered at trial.

### C. Fruit of the Poisonous Tree

In his motion to suppress, Smith did not challenge the entry into the detached garage, the search of the vehicle, or the lawfulness of his arrest. On appeal, Smith did not challenge the district court's determination that the officers gave him timely *Miranda* warnings and that his statements and assistance

---

**11**"In this case, even were we to entertain defendant's forfeited argument, . . . ."

**12**The Supreme Court has held that "the courts must also insist that the magistrate purport to perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." *Leon*, 468 U.S. at 914 (quoting *Aguilar v. State of Texas*, 378 U.S. 108, 111, 84 s.Ct. 1509, 12 L.Ed.2d 723 (1964)).

were voluntary. His only argument on appeal is that the cocaine found in the concealed compartment of the Chevrolet Lumina parked in the detached garage must be suppressed as fruit of the poisonous tree, i.e., the illegal no-knock entry into the house.

In determining whether evidence acquired after an illegal entry is inadmissible under the fruit of the poisonous tree doctrine, a court must decide if law enforcement officials obtained this evidence by exploiting the initial illegality or by sufficiently distinguishable methods. *Brown v. Illinois*, 422 U.S. 590, 599, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963); *United States v. Leake*, 95 F.3d 409, 411 (6th Cir. 1996) (citing *Murray v. United States*, 487 U.S. 533, 536-37, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (this doctrine "bars evidence which, though not obtained in the illegal search, was derived from information or items obtained in the search").

The crucial evidence was hidden in a concealed compartment in the vehicle and did not come to light because of the illegal no-knock entry into the residence. Nothing was found in the house and the conduct of the officers in the house did not in any way facilitate the access that the officers gained into the garage. Prior to searching the garage, the officers announced to Smith their intention to search the garage and car, conduct that was authorized in the warrant. Smith told an officer where the keys were and how to open the concealed compartment in the vehicle. As previously stated, Smith did not appeal the district court's determination that he was *Mirandaized*, or that his statements and assistance were voluntary. The officers already knew that the cocaine was concealed in a hidden compartment in the vehicle and Smith's voluntary acts confirmed what they already knew. "Under the fruit of the poisonous tree doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the constitutional violation." *United States v. Miller*, 146 F.3d 274, 270 (5th Cir. 1998)(citing *Brown v. Illinois*, 422 U.S. 590, 597- 603, 95 S.Ct. 2254, 2259-2261, 45 L.Ed.2d 416 (1975). *See also Nix v. Williams*, 467 U.S. 431, 442-44, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (the taint of illegality can be removed if the evidence is obtained from an independent source unrelated to the illegality). Here, the search warrant specifically authorized a search of the detached garage and all vehicles on the premises. Smith was not arrested in the house but outside the residence and was given his *Miranda* warnings. Therefore, his voluntary statements and acts are an independent source that breaks the chain of the illegal entry. Smith's voluntary conduct would have led any reasonable officer to further investigate the vehicle and its concealed compartment. Accordingly, the fruit of the poisonous tree doctrine does not operate to suppress the cocaine seized from the garage and vehicle.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.