NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0329n.06
Filed: May 9, 2006

No. 05-5106

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **ANTHONY GRAY**, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:    KENNEDY, COLE, McKEAGUE, Circuit Judges.

**R. GUY COLE, JR., Circuit Judge.**  Anthony Gray pleaded guilty to being a felon in possession of a firearm, and of altering and modifying that firearm, in violation of federal laws, following the district court's denial of his motion to suppress a sawed-off shotgun.  Gray's plea was conditioned on his ability to appeal the court's denial of his motion to suppress.  Gray challenges this denial, and further argues that he is entitled to a remand under *United States v. Booker*, 543 U.S. 220 (2005).  For the reasons that follow, we **AFFIRM** Gray's conviction but **VACATE** Gray's sentence and **REMAND** to the district court for resentencing.

**I.**

Anthony Gray was indicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and one count of knowingly possessing a firearm that had been altered and modified so as to have a barrel of less than 18 inches and an overall length of less than

26 inches, in violation of 26 U.S.C. § 5861(d). Gray moved to suppress the firearm underlying these charges. The following relevant facts were elicited during Gray's suppression hearing.

On August 31, 2002, two uniformed police officers responded to a call at an apartment complex. The officers—Shawn Baltz and Bob Parker, Jr.—were informed by the police dispatcher that an individual at the complex was in possession of a weapon. When the officers arrived at the apartments, they were met by Brandi Rounds. Rounds informed the officers that Gray had brandished a weapon and threatened to shoot her. Rounds further stated that Gray had retreated into a particular apartment. Baltz and Parker approached the apartment and knocked on the door. The tenant, Chaquita Martin, answered the door.

Baltz testified that he asked Martin if he and Parker could enter the apartment in order to locate Gray. She said "yes." The officers found Gray in a bedroom, handcuffed him, and brought him into the living room. According to Baltz, he then asked for Martin's permission to search her apartment, which she again granted orally. On cross-examination, however, Baltz was less clear as to Martin's consent to search:

Q:      So did you ask [Martin] if you could search for a sawed-off shotgun?
A:      For a weapon.
Q:      Her response was?
A:      There is no weapon inside the apartment.
Q:      Okay. So her response wasn't yes or no, it was [that] there was no weapon in the apartment?
A:      There is no weapon. She said there is no weapon inside the apartment.

According to Parker, he and Baltz received Martin's verbal permission both to enter and search the apartment before locating Gray. Parker testified that, having conducted an initial search, he specifically asked for permission to search under the bed. Upon Martin's oral consent, the

officers looked under the bed and there recovered the sawed-off shotgun that underlies Gray's conviction.

Martin also testified at Gray's suppression hearing. According to Martin, when the officers arrived she told them that Gray was not in the apartment. The officers nevertheless forced their way inside. Martin also denied granting permission to the officers to search her home. Yet on cross-examination, the following exchange took place between the prosecutor and Martin:

Q:    Ms. Martin, do you remember meeting with me on June 22, 2004?
A:    Yes, ma'am.
Q:    And do you remember testifying before the grand jury?
A:    Yes, ma'am.

***

Q:    This was my question [at that time,] "Okay, so you told them that you did not care and that you didn't have anything to hide, correct?" And then your answer [was,] "Yes, ma'am."
A:    Oh, I remember that you said that. I told you that it was okay for them to search. I said I don't recall that. I did say tell them that I — eventually that I didn't have anything to hide, I did, but talking about did I give them permission to search, I don't recall telling you that.

The district court ultimately credited the testimony of the officers over that of Martin. The court acknowledged that there were inconsistencies in the officers' testimony, but found that the inconsistencies were "not sufficient to make their testimony unbelievable." In contrast, the court found Martin's testimony to be "somewhat suspect." The court concluded that Martin "did give consent to search" and that it was "freely and voluntarily given." The court based its finding on Martin's testimony that she told the officers that Gray was not in the apartment, and "what was said by her in the [grand jury] transcript."

The court denied Gray's motion to suppress. Gray then changed his plea to guilty, on the condition that he could appeal the district court's denial of his suppression motion. The Probation Office completed a Presentence Investigation Report ("PSI"). The PSI recommended a base-offense level of twenty-two, a three-point reduction for acceptance of responsibility, and a total of six criminal history points, resulting in a criminal history category of III. Accordingly, Gray's Guideline range was between thirty-seven and forty-six months imprisonment. The district court sentenced Gray to thirty-seven months imprisonment.

## II.

### A. Motion to Suppress

In analyzing a district court's denial of a defendant's motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Smith*, 386 F.3d 753, 757-58 (6th Cir. 2004). This case turns on a factual question: whether Martin consented to the entry into, and search of, her home. *See United States v. Bueno*, 21 F.3d 120, 126 (6th Cir. 1993) ("Consent is a question of fact, and the district court's decision regarding consent will not be overturned unless it is clearly erroneous."). A decision constitutes clear error if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Dillard*, 438 F.3d 675, 680 (6th Cir. 1999) (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir.1999)).

We give particular deference to a trial court's assessment of credibility. *See Anderson v. Bessermer City*, 470 U.S. 564, 573-75 (1985). Indeed, "findings of fact anchored in credibility assessments are generally not subject to reversal upon [appellate] review." *United States v. Taylor*,

956 F.2d 572, 576 (6th Cir. 1992) (en banc).  However, a court's decision to credit testimony can constitute clear error if the testimony was implausible, internally inconsistent, or against the weight of evidence, such that no reasonable fact-finder would credit it.  *See Anderson*, 407 U.S. at 575.

A reasonable fact-finder could credit the testimony of Baltz and Parker over that of Martin.  Martin was evasive when questioned on cross-examination about her grand jury testimony.  During Gray's suppression hearing, Martin eventually recalled answering "yes ma'am" to the prosecutor's following question before the grand jury:  "Okay, so you told them you didn't care and that you didn't have anything to hide, correct?"  Furthermore, as the trial court noted, Martin's description of the events would have left Gray alone in the living room while both officers searched her home, which a reasonable trier of fact could find implausible.

As the district court acknowledged, there were a few inconsistencies between the testimony of Baltz and Parker.  For instance, Baltz recalled first asking permission to enter Martin's home, and later to search it, whereas Parker recalled asking permission at Martin's door both to search and enter her home. Yet we agree with the district court that the officers, who were testifying as to events that occurred three years earlier, were basically consistent on whether they asked and received consent to enter and search Martin's home.  We also agree that their testimony constituted a more plausible account of the events.  In short, we are not left with a firm conviction that the district court erred, and we accordingly affirm the district court's denial of Gray's motion to suppress.[1]

_____

[1]Gray also argues on appeal that Martin "acquiesced" to the search of her home, rather than consented.  *See U.S. v. Worley*, 193 F.3d 380, 387 (6th Cir. 1999).  Neither the officers' testimony,

**B.** **Remand in Light of *Booker***

Gray was sentenced on January 10, 2005, at the bottom of the Guideline range set forth in the PSI. His sentence was entered before the Supreme Court issued its decision in *United States v. Booker*, 543 U.S. 220 (2005), which held that the Sixth Amendment requires that the Guidelines be treated as advisory, rather than mandatory. *Id.* at 260. Both parties agree that this case should be remanded for resentencing pursuant to *Booker*, which is the proper result under our precedent. *See United States v. Barnett*, 398 F.3d 516, 525-30 (6th Cir. 2005); *United States v. Chandler*, 419 F.3d 484, 486 (6th Cir. 2005).

### III.

For the preceding reasons, we **AFFIRM** the district court's denial of Gray's motion to suppress, but **VACATE** his sentence in light of *Booker* and **REMAND** for resentencing.

---

nor that of Martin, support this argument. Martin testified that she denied the officers' requests outright, and Martin never maintained that she was in any way intimidated or coerced by the officers.