NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0137n.06

No. 09-5724

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 09, 2011**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,       )
                                )
    Plaintiff-Appellee,         )
                                )
                                )   ON APPEAL FROM THE UNITED
v.                              )   STATES DISTRICT COURT FOR THE
                                )   WESTERN DISTRICT OF KENTUCKY
                                )
BRYENT MILLER,                  )
                                )
    Defendant-Appellant.        )

Before:  MARTIN, BOGGS, and COOK, Circuit Judges.

COOK, Circuit Judge.  After discovering a gun in Bryent Miller's backpack during a traffic stop, authorities charged him with possession of a firearm by a convicted felon.  Miller moved to suppress the gun, characterizing its discovery as the product of an illegal stop and search.  The district court denied Miller's motion, and Miller entered a conditional guilty plea.  Miller now appeals the denial of his motion to suppress.  We affirm.

I.

While approaching a parking lot where other police officers were gathered as part of a drug violence task force, Louisville Police Lieutenant Stephen Thompson observed an orange car with gold rims, which he found "unique."  According to Thompson, Miller's brother Andreous, the driver

of the car, turned into the parking lot without signaling. When oncoming traffic prevented Thompson from pursuing Miller, the other officers initiated the stop. As they approached, these officers saw Andreous move toward his waist, causing one officer to draw his gun. The officers opened the driver's door and saw loose marijuana in Andreous's lap. As the officers removed Andreous from the car, they found crack cocaine on the floorboard and arrested him. In the meantime, Thompson arrived in the parking lot and removed Miller from the car. During a vehicle search, Thompson found a backpack behind Miller's seat that contained a gun, a fast food restaurant hat, and a name tag bearing Miller's name. Miller admitted to owning the gun.

A grand jury indicted Miller on one count of possession of a firearm by a convicted felon. Miller moved to suppress the gun as the product of an illegal stop and search. The district court held an evidentiary hearing, during which Andreous claimed he had signaled his turn. Thompson initially testified that he was behind Andreous's southbound car when Andreous turned into the parking lot without signaling. On cross-examination, Thompson first said that he was heading toward Interstate 264 (northbound), but then said that he did not know from which direction he had originally come. Thompson also testified that he was alone in the car. The court found Thompson's testimony credible and held that the police had probable cause to stop and search the car.

Afterwards, Thompson realized he confused some of his testimony. He called the prosecutor and asked to reopen the hearing. The district court granted the government's motion and allowed Thompson to clarify that he was driving northbound when he saw Andreous's car stopped or

stopping in the southbound lane to turn left without signaling. Thompson then made a U-turn, came up behind Andreous, and saw that he still had not signaled his turn. Thompson also stated that two other officers were in the car with him. The court commended Thompson for clarifying the record and affirmed its previous ruling. Miller entered a conditional guilty plea. The court sentenced him to thirty-seven months' imprisonment and three years of supervised release. Miller now appeals the denial of his motion to suppress.

II.

Miller faults the district court for crediting Thompson's testimony that Andreous failed to signal his turn. Absent this finding, Miller claims, the officers lacked probable cause to stop the car, rendering the gun the product of an illegal search. Considering the evidence in the light most favorable to the government, we review the district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Gross*, 624 F.3d 309, 314 (6th Cir. 2010). We accord "considerable deference" to a district court's credibility determinations, *United States v. Moses*, 289 F.3d 847, 851 (6th Cir. 2002), and "'[f]indings of fact anchored in credibility assessments are generally not subject to reversal upon appellate review,'" *United States v. Hudson*, 405 F.3d 425, 442 (6th Cir. 2005) (alteration in original) (quoting *United States v. Taylor*, 956 F.2d 572, 576 (6th Cir. 1992) (en banc)). "However, a court's decision to credit testimony can constitute clear error if the testimony was implausible, internally inconsistent, or against the weight of evidence, such that no

reasonable fact-finder would credit it." *United States v. Gray*, 182 F. App'x 408, 411 (6th Cir. 2006).

Despite this stringent standard, Miller urges us to overturn the district court's credibility determinations. Miller first argues that the district court did not consider whether the alleged failure to signal was merely a pretext to stop a car that Thompson admitted "st[ood] out." But the legality of a traffic stop does not hinge on an officer's internal motivation. *See Whren v. United States*, 517 U.S. 806, 812–13 (1996) (explaining that previous cases "foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999) ("[A]n officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle."). Thus, even if Thompson used the failure to signal as a pretext to initiate a traffic stop of an otherwise-suspicious vehicle, this fact does not undermine the probable cause that existed to make the stop if Andreous failed to signal his turn. *See United States v. Copeland*, 321 F.3d 582, 593 (6th Cir. 2003) (noting that "an observed moving violation" satisfied the probable cause standard).

Miller next contends that the district court should have discredited Thompson's testimony as inconsistent. Miller pinpoints two topics on which he claims Thompson testified inconsistently: the initial direction of Thompson's vehicle and whether any other passengers accompanied Thompson. But neither alleged inconsistency directly implicates the crux of the issue—whether

Andreous signaled his turn. Because these alleged inconsistencies bear only on collateral facts, we have no basis to disturb the court's credibility decision. *See United States v. Craig*, 198 F. App'x 459, 465 (6th Cir. 2006) (refusing to overturn district court's credibility determinations despite alleged inconsistencies regarding "inconsequential" facts); *United States v. Clark*, 136 F. App'x 831, 834–35 (6th Cir. 2005) (finding no clear error in decision to credit officer's testimony where inconsistencies related only to "collateral facts"). Thompson, moreover, corrected these facts himself.

Finally, Miller contends that the district court burdened the defense to disprove Thompson's testimony, citing several of the judge's statements:

•     "I don't think that [the defense] ha[s] shown me and proven to me that [the officers are] making it all up."

•     "I just wasn't given any reason not to credit [Thompson's] testimony about the one material fact that matters."

•     "[The defense] do[esn't] give me any reason not to believe [Thompson] necessarily . . . . I don't see any reason why I should not believe Lieutenant Thompson. You have given me none, other than the fact that he didn't remember a few things that aren't particularly material in my judgment."

Taken in isolation, these statements might suggest that the court placed the burden of proof on the defendant. But the transcripts of both evidentiary hearings—when read in their entirety—dispel this concern. The defense consistently emphasized that the government shouldered the burden of proof to show a traffic violation. And, when the defense questioned whether it had to disprove Thompson's testimony, the court clarified: "*I'm not saying that you have to disprove.*" The court, moreover, carefully explained the reasons why it credited Thompson's testimony over Andreous's, including that Thompson "care[d] enough about his integrity and his truthfulness" to correct his previous testimony. We thus decline to overturn the district court's credibility determination. *See Hudson*, 405 F.3d at 442.

III.

For the above reasons, we affirm the denial of Miller's motion to suppress evidence.