**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0290n.06
Filed: April 18, 2005

**No. 03-4488**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| **JOHNNY M. WHITE,** | ) | |
| | ) | **O P I N I O N** |
| *Defendant-Appellant.* | ) | |

BEFORE:     COLE, ROGERS, Circuit Judges; COHN, District Judge.[*]

**R. GUY COLE, JR., Circuit Judge.** Defendant-Appellant Johnny M. White pleaded guilty to two counts of being a felon in possession of a firearm, pursuant to 18 U.S.C. § 922(g). In the plea agreement, White preserved his right to appeal certain sentencing issues, as well as the district court's denial of White's motion to dismiss and his motion to suppress. White waived all other appeal rights. On appeal, he argues that the district court erred in denying his motion to dismiss based on the violation of his right to speedy trial, and also erred in denying his motion to suppress evidence gathered during two vehicle stops. White also argues that his plea was not knowing and voluntary because it was predicated on the constitutionality of the United States Sentencing Guidelines. For the reasons that follow, we **AFFIRM** the judgment of the district court.

_____

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. BACKGROUND

On August 8, 2002, Officer Vincent Ewelt saw a pick-up truck, dragging a muffler, make an illegal lane change. He activated his lights and sirens and stopped the vehicle. As Officer Ewelt was waiting for information from the police dispatcher about the vehicle, he saw the driver and one passenger exit the truck and run towards the woods. The third man, later identified as defendant Johnny White, remained in the vehicle. Ewelt testified that he contemplated following the two men, but realized he could not leave White alone in the truck. Therefore, he called for assistance and approached the truck.

As he was approaching the truck, Ewelt saw White "making movements." Believing White might be a threat, Ewelt ordered him to place his hands where Ewelt could see them. He next asked White to exit the vehicle and he conducted a patdown. During the patdown, White informed Ewelt that he had a magazine in his back pocket. Ewelt found the magazine as well as fourteen rounds of semi-automatic ammunition. Ewelt placed the magazine and ammunition in the back of the truck and placed White in the back of the police cruiser.

Ewelt returned to the truck and found a .44 magnum rifle on the floor where White had been sitting. He also found a semi-automatic assault rifle.

White was involved in a second stop on August 12, 2002. On that date, Officers Larry Smith and Hanz Turner were informed that a blue van with a white stripe was trying to run someone over on the sidewalk near the intersection of 65th Street and Regent Road in East Cleveland. The officers also received information from the police dispatcher about the license plate of the van and a description of the driver, a white male between the ages of 30 and 40. The officers proceeded to the

intersection, and within five minutes, saw a blue van with a white stripe driving down 65th Street. The van's license plate matched the license plate given by the police dispatcher except for one letter. Since the license plate was not identical, the officers called the number in to be checked. Before they heard back from the dispatcher, the officers saw the driver of the van fail to use his turn signal when making a right turn. The officers activated their lights and pulled over White and his female companion, Susan Bowers.

The officers approached the van and saw defendant White "fumbling around." The officers were unable to see what he was doing because there were blinds on the windows. Officer Smith asked White to place his hands in front of him where Smith could see them. Officer Turner asked Bowers to do the same.

Officer Smith asked White for his driver's license. White had a temporary identification card, but no driver's license. Bowers did not have a valid license either. While conducting this investigation, Officer Smith noticed what he believed was the barrel of a gun between the seats. He signaled to Turner to remove Bowers from the van, and proceeded to remove White from the vehicle. The officers placed White and his companion in separate cars. The officers searched the van and found crack pipes and stolen property, including six guns.

On September 18, 2002, a federal grand jury indicted White, charging him with three counts of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g). White was arraigned on September 30, 2002. The judge set a trial date of December 3, 2002. White filed a motion for a continuance to file pretrial motions, and for an extension of time on November 6, 2002 to file such motions. The motion was granted on November 12, 2002. Next, on November 20, 2002, White

filed a motion to sever the counts of the indictment and a motion to suppress the evidence seized during the two traffic stops. The United States filed responses on December 9, 2002. The district court scheduled a hearing for December 20, 2002.

On December 17, 2002, White's counsel filed a motion to continue the final pretrial and trial dates because she had been called for jury duty. White signed a speedy trial waiver on December 19, 2002, and the court made an ends-of-justice notation on the waiver. The suppression hearing was rescheduled for February 3, 2003, and trial was rescheduled for March 10, 2003. On February 3, 2003, the court held an evidentiary hearing and denied White's motion to suppress.

The court held what was to be a final pretrial conference on February 28, 2003. At that conference, White requested new counsel. In the course of evaluating this request, the judge asked the defendant, "Do you understand that if you asked for a new lawyer, that there is going to be a continuance of the trial . . . And that means that your request would effectively waive any right you would have to contend that the trial should occur on March 10th as it is currently scheduled?" White responded: "Yes, I do." The court further informed White, "It may be quite a while to get our schedules to mesh so it is convenient for everyone to be together and get your counsel up to speed." White responded: "I understand that." The court granted White's request for new counsel.

After new counsel was appointed, the court scheduled trial for May 5, 2003. On April 28, 2003, White filed a motion to dismiss the indictment based on his allegation that the court violated his right to speedy trial. The court held a hearing on this motion on July 2, 2003, and denied the motion on July 21, 2003. The court then scheduled trial for August 11, 2003. On August 11, 2003, White entered a conditional guilty plea, reserving his right to appeal the court's denial of his motion

to dismiss and his motion to suppress, but waiving all other rights of appeal.

## II.  ANALYSIS

**A.  The District Court Properly Denied White's Motion to Dismiss for Denial of his Right to Speedy Trial**.

*1.  White's Speedy Trial Argument.*

In determining whether the district court erred in denying White's motion to dismiss the indictment for violation of his speedy trial rights, this Court reviews the district court's legal conclusions *de novo* and its factual findings for clear error.  *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003).

The Speedy Trial Act requires the court to bring a defendant to trial within 70 days of the defendant's indictment or appearance in court, whichever is later.  18 U.S.C. § 3161(c)(1).  The Act specifically excludes certain periods of delay from the total number of days counted for purposes of the 70-day limit.  18 U.S.C. § 3161(h).

A defendant can establish a *prima facie* case of a Speedy Trial Act violation by showing that more than 70 days passed between his indictment or appearance in court and his trial.  18 U.S.C. § 3162(a)(2); *United States v. Jenkins*, 92 F.3d 430, 438 (6th Cir. 1996).  The government must then show that the number of properly excludable days is sufficient to bring the time period between indictment or appearance and trial, within the 70-day limit.  18 U.S.C. § 3162(a)(2); *Jenkins*, 92 F.3d at 438.

In this case, arraignment occurred on September 30, 2002.  Trial commenced on August 11, 2003.  Three-hundred and sixteen days elapsed between those two dates.  White's appeal, however,

is limited to the district court's denial of his motion to dismiss for denial of his right to speedy trial, not whether this right was actually violated. At the time of White's motion to dismiss, trial was set for May 5, 2003. As a result, we analyze White's claim as it was before the district court.

Both parties agree that the district court properly excluded the following time periods:

1. September 30, 2002;
2. November 6, 2002 to November 12, 2002;
3. November 20, 2002 to February 3, 2003;
4. February 28, 2003;
5. April 23, 2003; and
6. April 28, 2003 to May 5, 2003.

These time periods account for 94 excludable days. After subtracting the agreed-upon days, White argues 124 non-excludable days elapsed before his motion to dismiss. Specifically, he argues that the district court erred in excluding three additional time periods:

1. February 4, 2003 to February 27, 2003;
2. March 1, 2003 to April 22, 2003; and
3. April 24, 2003 to April 27, 2003.

Therefore, in order to affirm the decision of the district court, this Court must decide that the district court correctly excluded at least 54 of the 124 days White contends were non-excludable.

White also argues that two time periods subsequent to his motion to dismiss should not be excluded from this Court's calculation of the time between his arraignment and trial. However, in the plea agreement, White waived his right to appeal any issues not expressly reserved. White reserved the right to appeal certain sentencing errors and "the denial of his motion to suppress and motion to dismiss." J.A. 135. He did not reserve the right to appeal any alleged denial of speedy trial rights beyond those asserted in his motion to dismiss, which was decided on July 21, 2003.

Therefore, White waived the right to challenge any additional delays beyond the district court's ruling on his motion to dismiss on July 21, 2003. Consequently, we do not consider the July 22, 2003 time period and the August 2, 2003 time period.

*2. The District Court Properly Excluded the Time Periods from March 1, 2003 to April 22, 2003 and from April 24, 2003 to April 27, 2003 Because the Court's February 28, 2003 Continuance Was a Proper, Open-Ended, Ends-of-Justice Continuance and Was Reasonable in Scope.*

The district court, in evaluating White's speedy trial claim, noted that on February 28, 2003, White "indefinitely waived his right to speedy trial after a substantial in-court colloquy with the Court." A defendant cannot waive his right to speedy trial. *See Greenup v. United States*, No. 03-6530, slip op. at 4 (6th Cir. Mar. 20, 2005). Therefore, we treat the waiver as a request for a continuance. Under the Speedy Trial Act, a defendant may request a continuance, and the continuance may be granted and excluded from the speedy trial calculation, where "the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). This is referred to as an ends-of-justice continuance. In this case, the court did not explicitly label the continuance granted on February 28, 2003 an ends-of-justice continuance. Therefore, the first question before this Court is whether the district court articulated "contemporaneous findings" sufficient to support the grant of an ends of justice continuance.

This Court requires a clear articulation of the reasons that support an ends-of-justice continuance. *United States v. Crawford*, 982 F.2d 199, 204 (6th Cir. 1993). While the district court is not required to use the "magic words," it must consider factors and set forth reasons for its

decision. *United States v. Howard*, No. 94-6543, 1997 WL 705077 *1, *4 (6th Cir. Nov. 6, 1997).

By requiring articulation of the factors and rationales when the court grants a continuance, this Court

ensures that the lower court gives careful consideration to those factors and also provides a record

for appellate review.

In this case, the district court explained that a continuance would be necessary to allow for

new counsel to prepare for trial. This is sufficient justification under the statute, which states that

an ends-of-justice continuance is appropriate if "failure to grant such a continuance . . . would

unreasonably deny the defendant . . . continuity of counsel, or would deny counsel for the defendant

. . . reasonable time necessary for effective preparation, taking into account the exercise of due

diligence." 18 U.S.C. § 3161(h)(8)(B)(iv). As a result, the defendant's waiver may appropriately

be characterized as an ends-of-justice continuance.

The second question before this Court is whether the district court erred by not setting an end

date for the continuance. A judge may grant an open-ended continuance where it is not possible to

set a specific end date. *United States v. Sabino*, 274 F.3d 1053, 1065 (6th Cir. 2001) (finding open-

ended continuance permissible where evidence was complex and voluminous). In this case, the

continuance was only open-ended for three days, until the court assigned new counsel. It was not

practicable for the district court to set a trial date until new counsel was assigned. Thus, it was

reasonable to leave the continuance open-ended until new counsel was appointed.

The third question before this Court is whether the continuance was reasonable in scope.

*Sabino*, 274 F.3d at 1065. Once counsel was assigned, the district court set trial for May 5, 2003,

approximately two months after the grant of the initial continuance. We have previously held that

a seven-week continuance was valid to allow a defendant extra time to prepare for trial where that defendant did not have new counsel. *United States v. Cianciola*, 920 F.2d 1295, 1297 (6th Cir. 1990). Since this Court has permitted a seven-week continuance where a defendant merely needed more time to prepare for trial, it is reasonable to permit a two-month continuance where defendant requests, and is granted, entirely new counsel. *Cf. United States v. Spring*, 80 F.3d 1450, 1458 (10th Cir. 1996) (granting a two-month continuance for appointment of new counsel and preparation for trial). Therefore, the court's two-month continuance was reasonable in scope.

These findings are sufficient to support the district court's denial of White's motion to dismiss for denial of the right to speedy trial. The district court's two-month, open-ended, ends-of-justice continuance was valid and must be excluded from the calculation of days for purposes of the Speedy Trial Act. Consequently, 57 days were excludable in addition to the 94 days both parties agree were excludable. Therefore, we need not reach White's argument that the district court erred in excluding the time period from February 4, 2003 to February 27, 2003 because at least 54 of the days White argues were not excludable were properly excluded by the district court. We therefore affirm the district court's denial of White's motion to dismiss for violation of his right to speedy trial.

**B. The District Court Properly Denied Defendant's Motion to Suppress.**

On review of the denial of a motion to suppress, this Court reviews the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000). All evidence must be viewed in the "light most likely to support the district court's decision." *Id.* (quoting *United States v. Navarro-Comacho*, 186 F.3d 701, 705 (6th Cir. 1999)).

When a police officer briefly detains or "frisks" an individual, and the stop does not bear indicia of arrest, the search or seizure is governed by *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Under *Terry*, the court must find that the police officer had reasonable suspicion to justify this action. Reasonable suspicion is defined as "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry*, 392 U.S. at 21. The officer's belief does not need to be certain, only reasonable. *Id.* at 27. The Court should defer to the officer's reasonable inferences based on experience. *Id.* The protection of a police officer's safety is a sufficient justification for a *Terry* stop. *Id.* at 25-26.

*1. The Court Properly Denied Defendant's Motion to Suppress the Evidence Gathered During the August 8, 2002 Stop.*

Officer Ewelt's August 8, 2002 stop and frisk were supported by reasonable suspicion. First, Ewelt had authority to pull the truck over. Officers may stop vehicles for traffic violations. *Pennsylvania v. Mimms*, 434 U.S. 106, 111(1986); *United States v. Johnson*, 242 F.3d 707, 709-10 (6th Cir. 2001) (finding broken tail light justified stop); *United States v. Akram*, 165 F.3d 452, 455 (6th Cir. 1999) (finding failure to use turn signal for lane change justified stop); *United States v. McCully*, 21 F.3d 712 (6th Cir. 1994) (finding minor speeding violation justified stop). Officers also may remove all occupants pursuant to such a traffic stop, even absent any suspicious behavior. *Maryland v. Wilson*, 519 U.S. 408, 412 (1997). The vehicle in which White was riding was in violation of two traffic laws: it made an improper lane change and it was dragging a muffler. It was proper, therefore, for Ewelt to stop the vehicle and ask White to exit.

The next question is whether Officer Ewelt had reasonable suspicion to justify his frisk of

White.   Although Ewelt initially pulled the truck over for traffic violations, the flight of two of the truck's passengers gave Ewelt reason to believe the passengers may have committed some violation more serious than the two minor traffic violations.  Once Ewelt decided to investigate further, he had two grounds upon which he could justify his frisk of White.

First, Ewelt could frisk White to protect Ewelt's own safety during the investigation.  *See Terry*, 392 U.S. at 25-26.  Following the flight from the vehicle by the other two men, Ewelt saw the defendant making movements while still inside the vehicle.  Ewelt was initially alone, and needed to protect his own safety.  His brief frisk was thus justified under these circumstances.

Second, Ewelt could frisk White to protect himself in the police cruiser and to protect any other officers on their way to provide backup, who might enter the police cruiser.  Ewelt testified that he had to place White in the cruiser to prevent him from driving away or walking down the highway.  Ewelt's frisk was justified to protect the safety of Ewelt and any other officer who entered the vehicle.

White argues that his cooperation could not be relied upon to create reasonable suspicion.  Although cooperation does not generally create reasonable suspicion, *see United States v. Townsend*, 305 F.3d 537, 543 (6th Cir. 2002), Ewelt did not assert, and the district judge did not find, that White's apparent cooperation provided the justification for the search.  Instead, the district judge found that the flight of the two men gave the officer the reasonable suspicion required to investigate the remaining vehicle passenger, and that his concern for his own safety justified the frisk.  Further, the circumstances of this case are distinguishable from the facts of *Townsend*, upon which White relies.  In *Townsend*, none of the vehicle occupants fled; the occupants merely cooperated with the

police officers during the course of a traffic stop. *Townsend*, 305 F.3d at 539-40. Here, although Officer Ewelt pulled the truck over for traffic violations, the investigation ensued because two of the vehicle's occupants, including the driver, fled. In contrast to the situation in *Townsend*, here Officer Ewelt was no longer investigating a traffic violation. Under these circumstances, there were sufficient particularized facts to justify Officer Ewelt's determination that reasonable suspicion existed, and his subsequent decision to frisk White.

*2. The Court Properly Denied Defendant's Motion to Suppress the Evidence Gathered During the August 12, 2002 Stop.*

Officers Smith and Turner had reasonable suspicion to justify their August 12, 2002 stop of White as well. The law is clear that a traffic violation provides reasonable suspicion necessary to stop a vehicle. *See Johnson*, 242 F.3d at 709-10; *Akram*, 165 F.3d at 455. This Court has held that pretextual stops are valid, so long as the motorist actually committed a traffic violation. *See United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (*en banc*). Thus, regardless of the officers' true motive for stopping White, the stop is valid under the Fourth Amendment so long as the court finds that the officers reasonably believed White committed a traffic violation.

The testimony concerning the stop was conflicting, but only marginally so. White's female companion, Bowers, testified that she had told White to "make sure you use your blinkers" when she saw the police behind them. Both officers testified that White failed to use his right turn signal to make a right turn. The district court made a reasonable credibility determination finding that the officers' testimony was more credible than that of Bowers, who testified she was on drugs and unable to recall aspects of the incident. The court credited the officers' testimony that White failed

- 12 -

to use his turn signal, and found that the stop was justified on this basis alone. Because we grant deference to the district court's credibility findings, *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996), it was reasonable to conclude that a witness who testified she could not remember parts of the incident and that she was on drugs was less credible than two police officers. Further, Bowers's testimony did not conflict with that of the officers. She could have told White to use his turn signal, and he could have failed to do so. Since there is no showing of clear error, this factual finding should not be disturbed. Based on the officers' testimony and the court's reasonable credibility determinations, the district court had sufficient evidence to meet this standard.

**C. The Supreme Court's Recent Decision In *Booker* Does Not Require Remand.**

White argues that the Supreme Court's recent decision in *United States v. Booker*, --- U.S. ----, 125 S. Ct. 738 (2005) requires remand for resentencing. However, in his plea agreement, White waived his appeal rights except as to his motion to dismiss for denial of speedy trial rights, his motion to suppress, and the following sentencing issues: "(a) any punishment in excess of the statutory maximum; (b) any punishment to the extent it constitutes an upward departure from the Sentencing Guideline range deemed most applicable by the Court; (c) any sentence based on an offense level greater than contemplated by this agreement; (d) any criminal history category calculation to which the defendant objected at sentencing . . . ." J.A. 135. White does not appeal any of these preserved issues. Rather, White argues that his plea was not knowing and voluntary because it was "predicated on the constitutionality of" the Sentencing Guidelines. White's *Booker* Br. at 3. However, a subsequent change in law does not render a plea agreement unknowing or involuntary. *See United States v. Bradley*, 400 F.3d 459, 464 (6th Cir. 2005). Further, White

waived any other argument that his sentence must be remanded in light of *Booker* by waiving his

appeal rights in his plea agreement. *Id.* Therefore, we affirm the district court's sentence.

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.