NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0546n.06

No. 14-5093

**FILED**
Jul 31, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ALBERT FRANKLIN, JR.,

      Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

**BEFORE:**    CLAY, KETHLEDGE, and DONALD, Circuit Judges.

**CLAY, Circuit Judge.**  Defendant Albert Franklin, Jr. appeals from the January 17, 2014 judgment of the district court sentencing him to a total of 360 months of incarceration for one count of conspiring to possess with intent to distribute Oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 846, one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924, and one count of brandishing a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).

For the reasons that follow, we **AFFIRM** Franklin's conviction, **VACATE** Franklin's sentence, and **REMAND** for resentencing in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015).

## BACKGROUND

### A. Procedural History

Defendant Albert Franklin, Jr. was charged in a March 17, 2010 indictment with: (1) conspiring to possess with intent to distribute Oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); (2) being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count 2); and (3) brandishing a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3). Franklin's trial began on August 27, 2013. He was subsequently convicted of all charges by a jury, and was sentenced to a total of 360 months of imprisonment, comprised of 276 months of imprisonment to be served concurrently for Count 1 and Count 2, and 84 months to be served consecutively for Count 3.

### B. Factual History

This case stems from an undercover reverse drug operation undertaken by the Metropolitan Nashville Police Department (MNPD). This operation involved the participation of a confidential informant, Michael Kirkup, who solicited buyers for Oxycontin pills. As part of the operation, Kirkup contacted an acquaintance named Anthony "Duck" Griffin to inform him that Kirkup had a large quantity of Oxycontin pills for sale. Kirkup claimed that the pills had been stolen from a pharmacy. Griffin told Kirkup that his cousin (apparently referring to Franklin) might be interested in purchasing the pills. Following this conversation, Griffin contacted Franklin to coordinate the sale. Over the course of a number of conference calls between Kirkup, Griffin, and Franklin, an agreement was reached pursuant to which Franklin would purchase 3,000 Oxycontin pills for a sum of $22,000 in cash. Per Franklin's request, the

drug deal was scheduled to take place at Mustang Sally's Bar, a bar owned by Franklin in Nashville, Tennessee.

The arranged reverse drug operation took place on the evening of January 26, 2010. The MNPD gave Kirkup 3,000 placebo pills to stand in for 80mg Oxycontin pills, and outfitted Kirkup with a recording device and transmitter. Kirkup picked up Griffin and drove to Mustang Sally's Bar. Griffin entered the bar ahead of Kirkup. When Kirkup entered the bar, Franklin locked the door and asked Kirkup to show him the pills. Franklin examined the pills, and quickly thereafter took out a revolver and pointed it at Kirkup's head. Franklin then forced Kirkup to leave the bar and locked the door behind him as Kirkup ran out of the bar yelling "gun, gun." The officers attempted to enter the bar, but were thwarted by the bar's steel doors. The officers then called a S.W.A.T. team and obtained a search warrant for the bar. Franklin, Griffin, and three women exited the bar willingly before the search was executed.

Upon executing the search, officers found a loaded Smith & Wesson .357 magnum caliber revolver hidden behind a wall in the bar. No useful fingerprints were removed from that gun. One woman named Brenda Poteete, who had been inside the bar and had witnessed the events, testified that she saw Franklin pointing a gun at Kirkup. She also testified that once Kirkup exited the bar, Franklin left the main bar area with the gun for a short period of time and returned without it. Poteete initially denied seeing the gun, but testified at trial that she lied to the police at first because Franklin had told her to say that he was wielding a stapler, rather than a gun, and because she was afraid. At trial, Kirkup testified to the events leading up to the arranged drug transaction and the events at the bar. Additionally, the jury was allowed to hear the audio recording from the recording device that Kirkup wore into the bar.

Franklin testified in his own defense. He admitted that he intended to purchase the Oxycontin from Kirkup and that Griffin had arranged the transaction, but denied having a gun at any point in the transaction. Instead, Franklin claimed that, upon observing activity outside of the bar, he became suspicious and grabbed a stapler while pushing Kirkup out the door. Franklin insisted that, for his safety, he waited for the news media to arrive before voluntarily exiting the bar.

## DISCUSSION

### A. Speedy Trial Act

We typically review a district court's application of the Speedy Trial Act *de novo*. *United States v. Gardner,* 488 F.3d 700, 717 (6th Cir. 2007). However, a district court's determination that a delay qualifies as an "ends of justice" exception to the Speedy Trial Act is reviewed for abuse of discretion. *United States v. Howard*, 218 F.3d 556, 563 (6th Cir. 2000). "The decision to grant a continuance and to exclude the delay is a matter of discretion for the district court and to obtain reversal, a defendant is required to prove actual prejudice." *Gardner*, 488 F.3d at 718. In undertaking our analysis, we also consider whether "the district court properly placed its reasoning on the record." *United States v. Richardson*, 681 F.3d 736, 740 (6th Cir. 2012).

The Speedy Trial Act "generally requires a federal criminal trial to begin within seventy days after a defendant is charged or makes an initial appearance. . . ." *United States v. Brown*, 498 F.3d 523, 529 (6th Cir. 2007); 18 U.S.C. § 3161(c)(1). However, the Act provides for the exclusion of certain periods of delay from the calculation of these seventy days. 18 U.S.C. § 3161(h)(1). Permissible exclusions include:

> Any period of delay resulting from a continuance granted by any judge on his
> own motion or at the request of the defendant or his counsel or at the request of

the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A). If, after accounting for all permissible exclusions, the seventy day deadline is not met, "the district court must dismiss the indictment, either with or without prejudice." *United States v. Monger*, 879 F.2d 218, 220 (6th Cir. 1989).

The seventy day calculation "begins to run from the latter of two days: when the defendant is indicted, or when the defendant is arraigned." *United States v. Blackmon*, 874 F.2d 378, 380 (6th Cir. 1989). In this case, Franklin was indicted on March 17, 2010 and arraigned on May 25, 2010. The Speedy Trial Act clock therefore began to run on May 25, 2010. The parties do not contest that fifty-five days elapsed between Franklin's arraignment and the first motion filed in this case, which necessitated a Speedy Trial Act exclusion.

Franklin's Speedy Trial Act claim relates to a period of 139 days that elapsed between the district court's denial of Franklin's motion to suppress evidence and the subsequent rescheduling of his trial date. Because Franklin has not established that he experienced "actual prejudice" as a result of this delay, his Speedy Trial Act claim fails.

#### 1. Relevant Procedural Background

Franklin filed a motion to suppress evidence on October 23, 2011. His trial was, at that point, scheduled to begin on November 15, 2011. The district court continued the trial in order to give the court sufficient time to reach a decision regarding Franklin's motion. The district court ultimately denied his motion on January 27, 2012. No other motions were pending before the court at that time, and no action was taken by either party or the court to reschedule the trial date. The next filing was a motion for a status conference filed by Franklin's then co-defendant on May 16, 2012—139 days after the court denied Franklin's motion to dismiss. On agreement

of the parties, the district court entered an order disposing of the need for a status conference and scheduling the trial for September 11, 2012. On August 17, 2012, the district court severed Franklin's trial from that of his co-defendant. Following a series of motions and plea negotiations, the district court entered an additional order on February 5, 2013, continuing the trial until March 19, 2013 and finding the period of delay until the new trial date excludable from speedy trial calculations in the interests of justice. The court subsequently approved appointment of new counsel for Franklin (for the fourth time) and rescheduled the trial to begin on August 27, 2013.

Franklin filed a motion to dismiss his indictment based on an alleged Speedy Trial Act violation on June 11, 2013. Franklin's motion addressed the 139-day delay that began on the day the district court filed its order denying Franklin's motion to suppress evidence, as well as three other alleged violations not before this Court on appeal. The district court considered this motion and denied it in a memorandum order on August 1, 2013. The district court found that the 139 days that elapsed between January 28, 2012 and May 15, 2012 were excludable delay "as those dates reflect the time necessary for defense counsel to prepare for trial." (R. 149, Memorandum Order, Page ID # 393.)

## 2. District Court's Rationale for the 139-Day Exclusion

Franklin contends that the "after-the-fact" explanation provided by the district court is not supported by the record and amounts to an abuse of discretion. *Appellant's Br.* at 26. In its memorandum opinion, the district court reasoned that the five-month delay was "necessary to ensure that the parties were sufficiently prepared for trial, given [that] the Court's denial of Defendant's suppression motion naturally affected Defendant's strategic considerations in preparing for trial." (R. 149, Memorandum Order, Page ID # 389.) The district court also

noted that the attorney who filed Franklin's motion to suppress was the third attorney to be assigned to Franklin in this action, and that Franklin's counsel subsequently agreed to an order resetting the trial date for September 2012.

The authority cited by the district court does not support its rationale for excluding the challenged time period. The district court relied on two opinions from this Circuit to support its decision: *United States v. Stewart,* 628 F.3d 246 (6th Cir. 2010), and *United States v. White*, 129 F. App'x 197 (6th Cir. 2005). However, in both of these cases, the district court's determination that an exclusion was necessary to allow the defendant time to prepare for trial was made only after the defendant (or his counsel) had *initiated* the request.

Unlike the case at hand, in *Stewart*, the defendant's counsel had filed a memorandum "explaining why a continuance was warranted on the basis of the factors set out in the Speedy Trial Act's ends-of-justice provision." *Stewart*, 628 F.3d at 253. This motion was unopposed by the government, and the district court accepted its rationale, finding that the defendant's counsel "needed additional time to analyze the complex issues involved in the case . . . ." *Id.* at 254. On appeal, the defendant argued that he never authorized his attorney to request the continuance. In addressing this argument, we held that, "even though Stewart did not provide his consent, the district court acted within its wide range of discretion in deciding to grant the motion for a continuance that was filed by Stewart's attorney." *Id.* Similarly, in *White*, we affirmed a district court's decision to grant an ends of justice exclusion after defense counsel had indicated its desire for such an exclusion. At trial, the defendant in *White* "indefinitely waived his right to speedy trial after a substantial in-court colloquy with the Court." *White*, 129 F. App'x at 201 (internal quotation marks omitted). Although we found that such a waiver was impermissible, we interpreted the defendant's waiver as an affirmative "request for a continuance." *Id.*

7

Both *Stewart* and *White* stand for the proposition that the district court has wide discretion in granting an ends of justice exclusion where *defense counsel* requests a continuance to allow defense counsel time to prepare for trial. These cases do not go so far as to support the conclusion that a court may typically base a post-hoc justification for a lengthy period of delay on defense counsel's need for a continuance where no such request had previously been made by defense counsel. While the wide discretion provided to district courts in deciding to grant Speedy Trial Act exclusions may warrant such a *sua sponte* determination in some instances, this does not appear to be such a case. Here, the district court concluded that its denial of Franklin's motion to suppress justified an ends of justice exclusion because defense counsel's strategic considerations would "naturally" be affected by the district court's decision. (R. 149, Memorandum Order, Page ID # 392.) But where Franklin's counsel did not ask for a continuance or put forward this argument himself, such an assumption on the part of the district court without further explanation appears unwarranted.

In determining whether an exclusion to the Speedy Trial Act is appropriate, the district court is tasked with balancing the ends of justice with the "best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In this case, the district court had no reasoned basis for concluding that these interests were outweighed by the need to provide the defense additional time to prepare for trial, where defense counsel did not seek such an exclusion.

### 3. Actual Prejudice Requirement

Although the district court's decision to retroactively grant a Speedy Trial Act exclusion for the challenged 139-day period lacks a sufficient justification, Franklin nonetheless must "prove actual prejudice" in order to obtain a reversal of the court's decision. *Gardner*, 488 F.3d

at 718. He fails to do so. In the context of considering a Speedy Trial Act claim, the Supreme Court noted that:

> The length of delay, a measure of the seriousness of the speedy trial violation, in some ways is closely related to the issue of the prejudice to the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant, *in terms of his ability to prepare for trial or the restrictions on his liberty*.

*United States v. Taylor*, 487 U.S. 326, 340 (1988) (emphasis added). Franklin has not alleged that the period of delay harmed his ability to prepare for trial or imposed additional restrictions on his liberty. In fact, Franklin does not address the "actual prejudice" requirement in his appellate brief at all, and discusses the prejudicial effects of the challenged delay only as they relate to whether the action should be dismissed with or without prejudice. *Appellant's Br.* at 32. In that discussion, Franklin raises only vague generalized allegations that the delay caused him shame and anxiety, disrupted his employment, and interfered with his liberty. *Id.* The Sixth Circuit has previously held that "vague allegations of anxiety . . . and loss of business due to [] continued incarceration are not sufficiently prejudicial to warrant dismissing [] charges" on Speedy Trial Act grounds. *Monger*, 879 F.2d at 222. Moreover, many of these broad allegations are attributable to Franklin's conviction and sentence, rather than the delay in bringing him to trial. Absent any claims that the delay negatively affected his defense, it can be presumed that the conviction would have resulted regardless of the delay. Thus, in the circumstances of this case, Franklin's vague assertions of prejudice do not rise to the level of actual prejudice.

Where a defendant has failed to show that actual prejudice resulted from a district court's grant of an excludable continuance, this Court must find that the district court did not abuse its discretion under the Speedy Trial Act. *See United States v. Cianciola*, 920 F.2d 1295, 1301 (6th Cir. 1990) ("Recognizing the broad discretion granted to the district court to comply with the mandates of the Speedy Trial Act" and holding that "the district court did not abuse its discretion

by excluding the delay" where a defendant failed to prove actual prejudice (internal quotation marks and citation omitted)).  Once the challenged 139-day period is excluded from the Speedy Trial Act calculation, it is clear that Franklin's case went to trial within seventy days of his arraignment, as required by the Speedy Trial Act.  Accordingly, Franklin's rights under the Speedy Trial Act were not violated.

## B.  Motion to Suppress the Search Warrant

When considering a district court's ruling on a motion to suppress, we review the district court's findings of fact for clear error and its legal determinations *de novo.  United States v. Smith*, 386 F.3d 753, 757-58 (6th Cir. 2004).  In so doing, the evidence "must be viewed in the light most favorable to the government."  *Id.* at 758.  A district court's factual findings will be overturned on appeal only if the reviewing court has "the definite and firm conviction that a mistake has been committed."  *Id.* (internal quotation marks omitted).  Additionally, we "pay[] great deference to the determinations of probable cause made by a state magistrate, whose findings should not be set aside unless arbitrarily exercised."  *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996) (internal quotation marks omitted).  In reviewing a district court's denial of an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), we review the district court's factual findings for clear error, and its conclusions of law *de novo.  United States v. Brown*, 732 F.3d 569, 574-75 (6th Cir. 2013).

Franklin argues that the search warrant executed at Mustang Sally's Bar on January 26, 2010 should be suppressed because the affidavit serving as the basis of this warrant did not establish probable cause.  He further argues that the district court erred in refusing to grant him a *Franks* hearing.

### 1. Affidavit in Support of the Search Warrant

The Fourth Amendment guarantees that "no [w]arrants shall issue, but upon probable cause, supported by oath or affirmation . . . ." U.S. Const. amend. IV.  In the context of a search warrant, "probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (internal quotation marks omitted). An affidavit serving as the basis for a search warrant must "contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant." *Weaver*, 99 F.3d at 1377.

"When confronted with hearsay information from a confidential informant or an anonymous tipster, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information." *Helton*, 314 F.3d at 819.  The Supreme Court has held that:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983).  In order to facilitate "an independent judicial determination that the informant is reliable," an affidavit must include sufficient supporting facts, but "those facts need not take any particular form." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005).  We have previously held that such supporting facts could take the form of police corroboration of "significant parts of the informant's story," an attestation "with some detail that the informant provided reliable information [to the affiant] in the past," or "the willingness of the informant to reveal his or her name." *Id.*  (internal quotation marks omitted).

Additionally, the reliability of a confidential informant's hearsay statements "may be corroborated by various means, including direct surveillance or circumstantial evidence, or [being] vouchsafed by the affiant's statements about the informant's past performance." *United States v. Smith*, 182 F.3d 473, 478 (6th Cir. 1999) (internal quotation marks omitted).

In this case, the affidavit supporting the challenged search warrant included the following description:

> On 1-26-20 at approximately 1900 hrs, Detective Galluzi met with a confidential informant, hereafter referred to as CI. The CI and the CI's vehicle were searched for illegal contraband, and none was found. The CI arranged to sell 3000 80 mg Oxycontin tablets at Mustang Sally's Bar located at 1800 Dickerson Road. Detective Galluzzi gave the CI 3000 placebo Oxycontin tablets. The CI was directed to pick up Anthony Griffin at 26th Avenue and Clarksville Pike prior to arriving at Mustang Sally's. The CI was followed directly to this location where he picked up Anthony Griffin. Griffin entered the vehicle with the CI, and the CI drove Griffin to Mustang Sally's, 1800 Dickerson Pike. The CI and Anthony Griffin exited the vehicle and entered Mustang Sally's Bar. Albert Franklin was waiting inside, and asked the CI to show him the pills. The CI displayed the pills, and Albert Franklin pointed a handgun at the CI. Franklin told the CI to leave the bar. The CI exited the bar leaving the pills inside. The CI was under constant surveillance of officers.
>
> Said CI is familiar with Oxycontin from past exposure and experience. Your affiant knows CI is reliable for said CI has given information in the past that has led to the lawful recovery of illegal narcotics, narcotics equipment, weapons, money and felony arrests and convictions. Affiant will disclose CI's name to the Judge signing the warrant only. The CI wishes to remain anonymous for fear of reprisal.

(R. 129-2, Affidavit, Page ID # 286.)

Franklin argues that the affiant's statement regarding Kirkup's veracity and reliability was insufficient because it lacked detail regarding the frequency and nature of the affiant's previous interactions with Kirkup. However, an "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."

*United States v. Thomas*, 605 F.3d 300, 309 (6th Cir. 2010) (quoting *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc)).

Considering the totality of the information provided in the challenged affidavit, we find that the affidavit contains enough of the elements discussed in *McCraven* and *Smith* to support the magistrate's finding of probable cause. First, the affidavit includes detailed information regarding the circumstances of Kirkup's knowledge in this particular case, namely the fact that he had been instructed to arrange the drug transaction by detectives and had been given the placebos by the officers. Second, Kirkup had been under consistent police surveillance during the events described in the affidavit. Finally, the affiant attested that he had previously received reliable information from Kirkup leading to the "lawful recovery of illegal narcotics, narcotics equipment, weapons, money and felony arrests and convictions." (R. 129-2, Affidavit, Page ID # 286.) Accordingly, the district court did not err in denying Franklin's motion to suppress the search warrant.

## 2. *Franks* Hearing

Franklin further argues that he was entitled to a *Franks* hearing because the affidavit contained false and misleading statements, and that the district court erred by refusing to grant him such a hearing.

Although affidavits supporting search warrants are presumed to be valid, a defendant is entitled to an evidentiary hearing "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," if the challenged statement is necessary to the finding of probable cause. *Franks*, 438 U.S. at 155-56. If the defendant is able to establish the allegation of perjury or reckless disregard for the truth by a preponderance of the evidence, and if

"the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156.

In order to make the necessary threshold showing to receive a *Franks* hearing, the defendant must satisfy a two-prong test. *United States v. Hill*, 142 F.3d 305, 310 (6th Cir. 1998). First, the defendant must make a "substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false." *Id.* (internal quotation marks omitted). Second, the district court must find that these specified portions are "necessary to a finding of probable cause." *Id.*

The district court held a hearing on Franklin's motion to suppress at which it considered whether a *Franks* hearing was warranted. The court determined that Franklin failed to make a "substantial preliminary showing of a false statement [made] knowingly and intentionally or with reckless disregard of the truth . . . by the affiant in the affidavit." (R. 207, Hearing Transcript, Page ID # 1065.) On appeal, Franklin specifically challenges (1) the statement that "the CI was under constant surveillance of officers" and (2) the veracity of the portion of the affidavit stating: "Said CI is familiar with Oxycontin from past exposure and experience. Your affiant knows CI is reliable for said CI has given information in the past that has led to the lawful recovery of illegal narcotics, narcotics equipment, weapons, money and felony arrests and convictions."

### a. Statement that "CI was under constant surveillance"

With respect to the first challenged statement regarding the officers' surveillance of Kirkup, Franklin concedes that the statement is technically correct. Nonetheless, he argues that in the context of the rest of the affidavit, the statement that "the CI was under constant surveillance" was misleading because it suggests that the Kirkup was under *direct visual*

surveillance of law enforcement. In reality, Kirkup was under audio (rather than visual) surveillance for all of the events that transpired within the bar. Franklin contends that the proximity of this challenged statement in the affidavit to the sentence "Franklin pointed a handgun at the CI" would lead a magistrate judge to believe erroneously that law enforcement visually observed this event.

As a preliminary matter, Franklin does not appear to be arguing that the statement regarding surveillance is *false*, but rather that key details about the nature of the surveillance were improperly excluded. This distinction affects our analysis. We have previously held that a "*Franks* hearing may be merited when facts have been omitted in a warrant application, but only in rare instances." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998). In *Mays* we clarified that, "except in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *Id.* at 816 (defining "a showing of intent" to include "a 'deliberate falsehood' or 'reckless disregard for the truth'" (quoting *Franks*, 438 U.S. at 165)).

Black's Law Dictionary (10th ed. 2014) defines "surveillance" to mean "[c]lose observation or listening of a person or place in the hope of gathering evidence." Giving the affidavit its plain meaning, the affidavit accurately describes the officers' involvement in the underlying conduct. Even if the reference to "constant surveillance" in the affidavit is suggestive of *visual* surveillance, Franklin has failed to make a strong preliminary showing that the statement is false, or that critical information was excluded from the affidavit "with an intention to mislead." Franklin presents no evidence showing that the affiant exhibited a "reckless disregard for the truth" or included a "deliberate falsehood" in the affidavit. *Mays,* 134 F.3d at

816. Accordingly, Franklin fails to make the necessary preliminary showing to receive a *Franks* hearing on the basis that the affidavit omitted the fact that the officers engaged in audio rather than video surveillance of Kirkup. *See Hale v. Kart*, 396 F.3d 721, 727 (6th Cir. 2005) (emphasizing that "[t]he mere existence of omissions alone is ordinarily not enough to make [the] strong preliminary showing" articulated in *Mays*).

### b. Information about the Confidential Informant

Franklin next argues that the district court erred in denying him a *Franks* hearing on the basis of material omissions in the affidavit regarding Kirkup's reliability and veracity. In particular, Franklin argues that Kirkup's reliability and veracity was misrepresented by the omission of information about his criminal history, his compensation of $1,000 for his work in the underlying case, and the fact that he had worked with law enforcement for only a few months.

"Indicia of an informant's credibility are certainly important in an affidavit, and the omission of known information regarding credibility can in some cases be misleading enough to be deemed a falsehood under *Franks*." *United States v. Jones*, 533 F. App'x 562, 568 (6th Cir. 2013). In *Jones*, we considered whether a defendant was entitled to a *Franks* hearing where an affidavit omitted information about the confidential informant's criminal record, addiction to drugs, and the fact that the informant was paid for working with the police. We found that the defendant failed to make the strong preliminary showing, described in *Mays*, that the affiant had intentionally misled the judge. We also concluded that the police officer's corroboration (including audio and visual recording of the confidential informant's controlled drug purchases) suggested that the confidential informant's information was credible, and that the omitted information did not undermine probable cause. *Id.* Similarly, in *United States v. Fowler*, we

held that, "[w]ithout more than a mere allegation that the affiant failed to disclose the nature and degree of the confidential informant's criminal activity, [the defendant] was not entitled to a *Franks* hearing." *United States v. Fowler*, 535 F.3d 408, 416 (6th Cir. 2008).

As in *Jones*, Franklin fails to make the requisite showing that the affiant intended to mislead the magistrate judge. In fact, other than stating in a conclusory fashion that "Defendant made a 'strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause,'" Franklin does not meaningfully address this requirement. *Appellant's Br.* at 41. Moreover, given the affiant's past experience receiving reliable information from Kirkup, as well as the police officers' surveillance of Kirkup during significant portions of the relevant events, introduction of the omitted information would not have rendered Kirkup's information unreliable or eliminated the affidavit's probable cause. Accordingly, the district court did not err in denying Franklin's request for a *Franks* hearing.

## C. Sufficiency of the Evidence

We review a challenge to the sufficiency of the evidence supporting a criminal conviction *de novo*. *United States v. Pritchett*, 749 F.3d 417, 430 (6th Cir. 2014). A defendant challenging the sufficiency of the evidence "bears a very heavy burden." *United States v. Davis*, 397 F.3d 340, 344 (6th Cir. 2005) (internal quotation marks omitted). In undertaking our review, we must determine whether, "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted). In so doing, we "neither independently weigh[] the evidence, nor judge[] the credibility of witnesses who testified at trial." *United States v. Howard*, 621 F.3d 433, 460 (6th Cir. 2010) (internal quotation marks omitted).

Franklin argues that the government presented insufficient evidence to establish the "agreement" element of his conspiracy charge, or to connect him to the gun found at the bar. We disagree.

The elements that the government needed to prove in order to convict Franklin of conspiring to possess with intent to distribute Oxycodone under 21 U.S.C. § 846 were: "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Caver*, 470 F.3d 220, 232 (6th Cir. 2006) (internal quotation marks omitted). "The government need not prove the existence of a formal or express agreement among the conspirators. Even a tacit or mutual understanding among the conspirators is sufficient." *Gardner*, 488 F.3d at 710 (internal citations omitted). A defendant's knowledge and intent to join the conspiracy "can be inferred through circumstantial evidence, including evidence of repeated purchases, or evidence of a large quantity of drugs." *Caver*, 470 F.3d at 233 (internal citation omitted).

Franklin claims that, "at most," the government's evidence established that Griffin served as a "facilitator of the sale between the CI and [Franklin]," rather than establishing that a conspiratorial "agreement" existed. *Appellant's Br.* at 43. In putting forward this argument, Franklin seeks to draw a distinction between the crime of *possessing* drugs for distribution, which he conceded could have been proven at trial, and the crime of *conspiracy* to possess drugs for distribution. This argument is unpersuasive. The testimony provided by Kirkup and Franklin was sufficient to allow a rational trier of fact to find that Franklin and Griffin had entered an agreement to violate drug laws. At trial, Kirkup testified that Griffin set up multiple three-way phone conversations between himself, Kirkup, and Franklin. During these calls, the three men negotiated the price at which Griffin would purchase 3,000 pills from Kirkup, and selected the

location where the drug transaction would take place. Kirkup testified that he never had Franklin's phone number and that Griffin initiated the three-way calls whenever Kirkup needed to contact Franklin. Kirkup also testified that, on the way to the scheduled drug transaction, Griffin called Franklin to report that he and Kirkup were on the way and that Griffin headed into the bar first. Once they were all in the bar, Franklin asked to see the pills.

In addition to Kirkup's testimony, the jury was allowed to listen to an audio recording from the wire that Kirkup was wearing in the bar. This recording included Franklin's conversation with Kirkup regarding the nature of the Oxycontin and where Kirkup allegedly procured it. Additionally, Franklin himself testified that Griffin put him in touch with Kirkup, that he negotiated with Kirkup to buy Oxycontin pills for $22,000, and that Griffin accompanied Kirkup to the bar for the drug transaction.

The testimony of Kirkup and Franklin regarding Griffin's role in the drug transaction provides a sufficient basis for a rational trier of fact to have found that Griffin and Franklin entered an agreement to possess with intent to distribute Oxycontin. Making "all reasonable inferences and credibility choices in support of the jury's verdict," the interactions described in both Kirkup and Franklin's testimony are indicative of a tacit or mutual understanding between Franklin and Griffin, sufficient to support Franklin's conspiracy conviction. *United States v. Newsom*, 452 F.3d 593, 608 (6th Cir. 2006) (internal quotation marks omitted).

With respect to the two firearm charges, Franklin argues that the evidence does not support the inference that he was directly connected to the gun found in his bar. He specifically notes the absence of fingerprints on the gun and the fact that one of the government's witnesses testified that the pistol she saw was silver and black, although the gun found by police was solid black. As with his first sufficiency of the evidence challenge, Franklin's argument with respect

to the firearm charges is unpersuasive. At trial, Kirkup and Brenda Poteete, a woman who was in the bar during the drug transaction, both testified that Franklin pointed a gun at Kirkup. Poteete also testified that at some point after forcing Kirkup to leave the bar, Franklin left the main area of the bar with the gun and came back without it. During a search of the bar, the police uncovered a gun hidden behind a wall. Although Poteete's credibility was called into question during cross-examination, we must make all credibility determinations "in support of the jury's verdict." *Id*. As such, given the testimony of two witnesses and the physical evidence, Franklin's sufficiency of the evidence argument fails.

### D. Armed Career Criminal Status

Franklin was sentenced as an Armed Career Criminal within the meaning of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e) and United States Sentencing Guideline ("U.S.S.G.") § 4B1.4. However, Franklin's prior convictions for attempted burglary and felony evading arrest, which were considered predicate "violent felonies" under the ACCA for the purposes of establishing Franklin's Armed Career Criminal status, qualify as predicate offenses only under the ACCA's now defunct residual clause. *See United States v. Bureau*, 52 F.3d 584 (6th Cir. 1995) (holding that attempted burglary under Tennessee law qualifies as a violent felony under the ACCA's residual clause); *United States v. Doyle*, 678 F.3d 429, 437 (6th Cir. 2012) (holding that felony evading arrest under Tennessee law qualifies as a violent felony under the ACCA's residual clause). In *Johnson v. United States*, the Supreme Court struck down the ACCA's residual clause as void for vagueness. 135 S. Ct. 2551 (2015). The Court has since vacated the sentences of individuals who were sentenced under the residual clause of the ACCA and the comparable residual clause of the U.S.S.G. *See United States v. Darden*, 605 F. App'x

545, 546 (6th Cir. 2015). Consequently, in light of *Johnson*, and in the interest of justice, we vacate Franklin's sentence and remand to the district court for re-sentencing.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** Franklin's conviction, **VACATE** Franklin's sentence, and **REMAND** for resentencing in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015).